1   ALEXANDER G. CALFO (SBN 152891)
    *alexander.calfo@btlaw.com*
2   KELLEY S. OLAH, (SBN 245180)
    *kelley.olah@btlaw.com*
3   GABRIELLE J. ANDERSON-THOMPSON (SBN 247039)
    *gabrielle.anderson-thompson@btlaw.com*
4   **BARNES & THORNBURG LLP**
    2029 Century Park East, Suite 300
5   Los Angeles, California  90067
    Telephone:     (310) 284-3880
6   Facsimile:     (310) 284-3894

7   Attorneys for Defendants
    DEPUY ORTHOPAEDICS, INC; JOHNSON & JOHNSON
8   SERVICES, INC.; and JOHNSON & JOHNSON (erroneously sued as
    "Johnson & Johnson, Inc.").
9

10                       UNITED STATES DISTRICT COURT

11                      NORTHERN DISTRICT OF CALIFORNIA

12

13   WILLIAM FRANCIS CONDON III,          Case No.

14                  Plaintiff,            **NOTICE OF REMOVAL OF ACTION
                                          UNDER 28 U.S.C. SECTION 1441(b)**
15        vs.                             **(DIVERSITY)**

16   JOHNSON & JOHNSON SERVICES,          Complaint Filed:  August 27, 2014
     INC.; JOHNSON & JOHNSON, INC.;
17   DEPUY ORTHOPAEDICS, INC.;
     THOMAS SCHMALZRIED, M.D.;
18   PINNACLE WEST ORTHOPAEDICS,
     INC.; GOLDEN STATE
19   ORTHOPAEDICS, INC.; AND DOES
     ONE through ONE HUNDRED,
20
                    Defendants.
21

22

23        Defendants DePuy Orthopaedics, Inc. ("DePuy"), Johnson & Johnson (erroneously sued as

24   "Johnson & Johnson, Inc.") and Johnson & Johnson Services, Inc. (collectively, "removing

25   defendants"), through undersigned counsel, hereby remove the state-court action entitled *William*

26   *Francis Condon III v. DePuy Orthopaedics, Inc. et al.*, Civil Action No. CGC-14-541371, filed in

27   the Superior Court of California, County of San Francisco.  Removal is warranted under 28 U.S.C.

28   § 1441(b) because this is a diversity action over which the Court has original jurisdiction under 28

                                              1
    NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTION 1441(b) (DIVERSITY)

U.S.C. § 1332.

In support of removal, removing defendants state as follows:

1.     On or about August 27, 2014, plaintiff commenced this action against the removing defendants, Dr. Thomas P. Schmalzried, M.D. ("Dr. Schmalzried"), Pinnacle West Orthopaedics, Inc. ("PWO") and Golden State Orthopaedics, Inc. ("GSO") (PWO and GSO are referred to collectively as the "distributor defendants") and un-named Doe defendants, by filing a complaint in the Superior Court of San Francisco County, in the State of California, bearing case number CGC-14-541371.

2.     In this action, plaintiff alleges that he suffered various injuries as a result of being implanted with the Pinnacle Acetabular Cup System ("Pinnacle Cup System"), which was marketed and sold by DePuy.  (Compl. ¶¶ 27-28.)

3.     This is one of more than 7,000 similar cases pending around the country involving personal-injury allegations by plaintiffs who were implanted with a Pinnacle Cup System marketed and sold by DePuy.  On May 23, 2011, the Judicial Panel on Multidistrict Litigation issued an order establishing MDL No. 2244, *In re: DePuy Orthopaedics Inc., Pinnacle Hip Implant Products Liability Litigation*, before Judge Ed Kinkeade in the United States District Court for the Northern District of Texas.  Removing defendants intend to seek the transfer of this action to that proceeding, and will shortly provide the MDL Panel notice of this action pursuant to the "tag-along" procedure contained in the MDL Rules.

4.     As set forth more fully below, this case is properly removed pursuant to 28 U.S.C. § 1441, because the Court has subject-matter jurisdiction over it, pursuant to 28 U.S.C. § 1332, and removing defendants have satisfied the procedural requirements for removal.

## I.   REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT-MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.

5.     The Court has subject-matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1332 and 1441 because this is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and is between citizens of different States.

A.    **Complete Diversity Of Citizenship**

6.    Plaintiff's Complaint does not allege his state of citizenship; removing defendants assume that plaintiff is a citizen of the State of California absent any allegation to the contrary.

7.    DePuy is, and was at the time plaintiff commenced this action, a corporation organized under the laws of the State of Indiana with its principal place of business in Warsaw, Indiana, and is therefore a citizen of the State of Indiana for purposes of determining diversity.  28 U.S.C. § 1332(c)(1).

8.    Johnson & Johnson and Johnson & Johnson Services, Inc. are, and were at the time plaintiff commenced this action, corporations organized under the laws of the State of New Jersey with their principal place of business in New Brunswick, New Jersey, and are therefore citizens of the State of New Jersey for purposes of determining diversity.  28 U.S.C. § 1332(c)(1).

9.    Dr. Schmalzried is a citizen of the State of California.  (Compl. ¶ 10.)

10.    PWO is a citizen of the State of California.  (*Id.* ¶ 11.)

11.    GSO is a citizen of the State of California.  (*Id.* ¶ 12.)

12.    Plaintiff also names numerous "Doe" defendants, whose citizenship is disregarded for purposes of removal.  28 U.S.C. § 1441(b)(1).

13.    Thus, plaintiff is diverse from all defendants except Dr. Schmalzried, PWO and GSO.

14.    The presence of Dr. Schmalzried and the distributor defendants in this case does not defeat diversity jurisdiction because they are fraudulently joined.  Under the fraudulent-joinder doctrine, a court should disregard the citizenship of a defendant where there is "no possibility that the plaintiff will be able to establish a cause of action in state court against the alleged sham defendant."  *Taylor v. Jeppesen DataPlan, Inc.*, No. C 10-1920 SBA, 2010 U.S. Dist. LEXIS 106160, at *5 (N.D. Cal. Sept. 27, 2010) (internal quotation marks and citation omitted); *see also McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

15.    That is precisely the case here.  Although plaintiff alleges claims against Dr. Schmalzried and the distributor defendants for strict liability, negligence, intentional

1  misrepresentation and fraudulent concealment, there is no possibility that these claims would

2  succeed under California law for multiple reasons.

3          **(1)     All Of Plaintiff's Claims Against Dr. Schmalzried And The**
                     **Distributor Defendants Are Doomed To Fail Under Mensing And**
4                    **Bartlett.**

5          16.     There is no possibility that plaintiff can prevail on any of his claims against Dr.

6  Schmalzried or the distributor defendants because such claims are preempted when brought

7  against **non-manufacturers** of an FDA-approved product. *See PLIVA, Inc. v. Mensing*, 131 S. Ct.

8  2567, 2581 (2011); *Mut. Pharm. Co. v. Bartlett*, 133 S. Ct. 2466 (2013); *see also* Decl. of Dr.

9  Thomas P. Schmalzried ("Schmalzried Decl.") ¶ 2, *Sanchez v. DePuy Orthopaedics, Inc.*, No. CV

10 11-7867 (C.D. Cal.) (attached as Ex. 1) (attesting that Dr. Schmalzried "played no role in the

11 manufacturing, packaging, labeling, regulatory submissions, sales, inspection, distribution, and

12 adverse event and complaint reporting, handling or tracking for the Pinnacle Cup System").

13         17.     In *Mensing*, the U.S. Supreme Court ruled that all claims against generic drug

14 manufacturers that were premised on a failure to warn are preempted by federal law based on the

15 principle of impossibility preemption. 131 S. Ct. at 2581. According to the Supreme Court,

16 generic manufacturers cannot be found liable on a failure-to-warn theory because generic

17 manufacturers have no power to unilaterally effectuate a label change; rather, they must use the

18 same labels and warnings as those approved by the FDA with respect to the brand-name version of

19 the drug. *Id.* at 2575-76. Thus, as long as the labels and warnings for the generic form of the drug

20 match the labels and warnings that the FDA has approved for the brand-name form of the drug,

21 generic manufacturers cannot as a matter of law be held liable under state tort law for failing to

22 warn.

23         18.     Although *Mensing* involved failure-to-warn claims, the Supreme Court has reached

24 a similar conclusion as to product-design claims as well. In *Bartlett*, the Supreme Court held that

25 a generic manufacturer could not "legally make [the relevant product] in another composition"

26 under the Federal Food, Drug, and Cosmetic Act ("FDCA"). *Bartlett*, 133 S. Ct. at 2475 (internal

27 quotation marks and citation omitted). As the Court explained, "the FDCA requires a generic drug

28

1   to have the same active ingredients, route of administration, dosage form, strength, and labeling as

2   the brand-name drug on which it is based." *Id.* (citing 21 U.S.C. §§ 355(j)(2)(A)(ii)-(v) and

3   (8)(B); 21 C.F.R. § 320.1(c)).  Because it was "not possible" for the generic manufacturer

4   defendant in *Bartlett* to "redesign" the product at issue to make it more useful or less risky, the

5   Court concluded that causes of action based on a defective design are likewise preempted. *See id.*;

6   *see also Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 187 (5th Cir. 2012) ("[W]e are

7   persuaded that [plaintiff's] design defect claim [against generic manufacturer] would be

8   preempted [under *Mensing*].")*, cert. denied*, 134 S. Ct. 57 (2013); *Gardley-Starks v. Pfizer, Inc.*,

9   917 F. Supp. 2d 597, 611 (N.D. Miss. 2013) (design-defect claims "are also preempted"); *In re*

10  *Pamidronate Prods. Liab. Litig.*, 842 F. Supp. 2d 479, 484 (E.D.N.Y. 2012) ("the 'federal duty of

11  sameness,' also applies in the context of generic drug design") (internal quotation marks and

12  citations omitted).

13      19.    As other courts have found, these principles apply in spades to non-manufacturing

14  defendants such as Dr. Schmalzried and the distributor defendants.  After all, these defendants

15  have "no authority" to effectuate changes to the product or its labeling either. *See, e.g., In re*

16  *Fosamax Prods. Liab. Litig.*, MDL No. 2243 (JAP-LHG), No. 3:08-cv-00008-JAP-LHG, 2012

17  U.S. Dist. LEXIS 5817, at *26-28 (D.N.J. Jan. 17, 2012) (because a distributor "ha[d] no authority

18  to initiate a labeling change" and "no power to unilaterally change Fosamax labeling," it "could

19  not independently do under federal law what state law requires of it"); *see also Stevens v. Cmty.*

20  *Health Care, Inc.*, No. ESCV200702080, 2011 WL 6379298, at *1 (Mass. Super. Ct. Oct. 5, 2011)

21  ("As a distributor, however, [the defendant] had no ability to change labeling or warnings and

22  thus, like a generic manufacturer, [it] cannot be subject to liability in connection with a state law

23  claim premised on a 'failure to warn.'").

24      20.    In *In re Fosamax*, for example, the court granted a distributor's motion for

25  judgment on the pleadings after finding that the plaintiffs' state-law claims were preempted.  2012

26  U.S. Dist. LEXIS 5817, at *26-28.  The plaintiffs in *Fosamax* asserted a number of claims against

27  "the authorized distributor of branded Fosamax" that "emanated from a general theory of failure to

28  warn," including "defective design, negligence, fraud, misrepresentation, breach of express and

implied warranties, violation of consumer protection statutes, restitution, and loss of consortium." *Id.* at *20-21. In rejecting the plaintiffs' claims, the district court ruled that "[a]s a distributor of Fosamax, [the distributor] ha[d] no power to change Fosamax labeling." *Id.* at *27. According to the court, "[t]hat power lies with the applicant who . . . seek[s] approval to market Fosamax" – in that case, Merck. *Id.* at *27. Additionally, the court noted that if the FDA had become aware of new safety information in connection with Fosamax use that it believed should be included in the labeling, the FDA would have notified Merck – not the distributor. *Id.* Because the distributor "ha[d] no authority to initiate a labeling change" and "no power to unilaterally change Fosamax labeling," it "could not independently do under federal law what state law requires of it." *Id.* at *28 (citing *Mensing*, 131 S. Ct. at 2579) (internal quotation marks omitted). Accordingly, the court found that "the state law claims brought against [the distributor] [were] preempted." *Id.*

21.     Precisely the same reasoning applies here. All of plaintiff's claims against Dr. Schmalzried and the distributor defendants rest on either a failure-to-warn theory or a defective-design theory.[1]  (*See, e.g.*, Compl. ¶ 44 ("The warnings and directions provided with the Pinnacle System by defendant failed to adequately warn of the potential risks and side effects of each system"); *id.* ¶ 53 ("As a direct and legal result of the above-described negligence in design,

---

[1]     Plaintiff also purports to pursue theories of defective manufacture and failure to test against all the defendants (*see* Compl. ¶¶ 29-39, 50-54), but he cannot prevail against Dr. Schmalzried or the distributor defendants on either. Because it is undisputed that Dr. Schmalzried and the distributor defendants had absolutely no role in the manufacture of the Pinnacle Cup System, they obviously cannot be held liable on a defective-manufacture theory. In addition, plaintiff's failure-to-test theory is nothing more than a failure-to-warn theory in disguise and is thus barred by *Mensing* too. *See Gross v. Pfizer, Inc.*, 825 F. Supp. 2d 654, 659 (D. Md. 2011) ("Plaintiff contends that her allegation that PLIVA failed to test and inspect its products survives *Mensing*. The Court fails to see how these allegations are but a piece of Plaintiff's larger failure to warn claims. Accordingly, *Mensing* preempts these allegations as they relate to Plaintiff's failure to warn claims."), *aff'd sub nom. Drager v. PLIVA USA, Inc.*, 741 F.3d 470 (4th Cir. 2014). Plaintiff also asserts a cause of action for negligence based on a "failure to recall/retrofit." (*See* Compl. ¶¶ 55-62.) But like his failure-to-test claim, this theory, even if recognized under California law, is also preempted under *Mensing*. *See Gross*, 825 F. Supp. 2d at 659 (*Mensing* preempted all of plaintiff's claims, including those based on plaintiff's allegations that the defendant was "negligent for continuing to sell metoclopramide with an inadequate label, for continuing to sell a product that was not fit for the purpose for which it was sold, and for continuing to place an unreasonably dangerous product into the stream of commerce").

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTION 1441(b) (DIVERSITY)

1    testing, distribution, manufacture, advertising, sales, and marketing, plaintiff suffered the injuries

2    herein described"); *id.* ¶ 67 ("defendants failed to adequately warn of the dangers presented by the

3    Pinnacle System"); *id.* ¶ 72 ("Defendants knowingly and intentionally represented to plaintiff,

4    plaintiff's healthcare providers, and the public that the Pinnacle System was safe for use and that

5    defendants' labeling, marketing, and promotional materials fully described all known risks

6    associated with the Pinnacle System."); *id.* ¶ 81 ("defendants concealed material facts from

7    plaintiff and plaintiff's health care providers").)  Because neither Dr. Schmalzried nor the

8    distributor defendants had any "power to unilaterally change" either the design of the FDA-

9    regulated Pinnacle Cup System – or the warnings that accompanied it – all of plaintiff's claims

10   against them are preempted.  *See Lashley v. Pfizer, Inc.*, 877 F. Supp. 2d 466, 480-81 (S.D. Miss.

11   2012) (rejecting plaintiffs' contention that it was error for the court to find their claims for "failure

12   to warn, negligence, strict liability, breach of warranty as to merchantability, breach of warranty as

13   to fitness for a particular purpose, misrepresentation, and fraud" preempted under *Mensing*), *aff'd*,

14   750 F.3d 470 (5th Cir. 2014).

15       22.    For this reason alone, plaintiff's claims against Dr. Schmalzried and the distributor

16   defendants are doomed to fail, demonstrating that they are fraudulently joined.

17           *(2)    There Is No Possibility That Liability Would Be Imposed On Dr.*
                     *Schmalzried Under California Law.*
18

19       23.    Even if plaintiff's claims against Dr. Schmalzried were not preempted by federal

20   law, there is "no possibility that the plaintiff [would] be able to establish [her] cause[s] of action in

21   state court against" Dr. Schmalzried for additional reasons as well.  *Taylor*, 2010 U.S. Dist.

22   LEXIS 106160, at *5.

23       24.    **Strict Liability.**  No California court would impose strict liability on Dr.

24   Schmalzried because he did not control the manufacture or distribution of the Pinnacle Cup

25   System.

26       25.    Although California allows application of strict-liability theories to participants

27   outside the chain of distribution, the circumstances under which such liability is permitted are

28

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTION 1441(b) (DIVERSITY)

extremely narrow.  In *Bay Summit Community Association v. Shell Oil Co.*, the court articulated a

three-part test for strict-liability claims against a non-manufacturing, non-distributing defendant:

> (1) the defendant received a direct financial benefit from its
> activities and from the sale of the product; (2) the defendant's role
> was integral to the business enterprise such that the defendant's
> conduct was a necessary factor in bringing the product to the initial
> consumer market; and (3) the defendant had control over, or a
> substantial ability to influence, the manufacturing or distribution
> process.

51 Cal. App. 4th 762, 776 (1996).  The court went on to explain that the fact that "an entity was a

link in the chain of getting goods to the market or that it participat[ed] in marketing a defective

product is not enough to establish the defendant should be held strictly liable." *Id.* at 778 (internal

quotation marks and citation omitted); *see also Taylor v. Elliott Turbomachinery Co. Inc.*, 171

Cal. App. 4th 564, 576 (2009) (a claim for strict-liability failure to warn arises only where a

plaintiff can prove, *inter alia*, that "the defendant had control over, or a substantial ability to

influence, the manufacturing or distribution process").  After all, and as other California courts

have held, "[t]here is, implicit in the strict liability standard, a requirement that the defendant have

some ability to control the manufacturing or distribution of the product." *Bruce v. Clark Equip.

Co.*, No. Civ. S-05-01766 WBS KJM, 2007 U.S. Dist. LEXIS 25331, at *11 (E.D. Cal. Mar. 26,

2007); *Hanberry v. Hearst Corp.*, 276 Cal. App. 2d 680, 687-88 (1969) (holding that strict liability

"should not be extended . . . to a general endorser" that was not "involved in manufacturing

products for, or supplying products to, the consuming public").

      26.     Here, as set forth above, Dr. Schmalzried "played no role in the manufacturing,

packaging, labeling, regulatory submissions, sales, inspection, distribution, and adverse event and

complaint reporting, handling or tracking for the Pinnacle Cup System."  Schmalzried Decl. ¶ 2.

Accordingly, there is no reasonable possibility that plaintiff can prevail on his strict-liability

claims against Dr. Schmalzried.[2]

---

[2]    In addition, to the extent plaintiff asserts a design-defect strict-liability claim against Dr.
Schmalzried (*see, e.g.*, Compl. ¶ 50), it is also barred because, under California law, "the entire
category of medical implants available only by resort to the services of a physician are immune
(footnote continued)

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTION 1441(b) (DIVERSITY)

27.   **Negligence.**  Plaintiff's negligence claims against Dr. Schmalzried also have no possibility of success because plaintiff cannot establish that Dr. Schmalzried owed any independent duty to him.

28.   As set forth in the attached declaration, Dr. Schmalzried was merely "one of eight surgeons selected by DePuy who provided assistance to DePuy with the design of the Pinnacle Cup System."  Schmalzried Decl. ¶ 3.  No duty arises from "being the developer, inventor, or patent holder of a product or design."  *Murphy v. Aventis Pasteur, Inc.*, 270 F. Supp. 2d 1368, 1376-77 (N.D. Ga. 2003); *see also Weseloh Family Ltd. P'ship v. K.L. Wessel Constr. Co.*, 125 Cal. App. 4th 152, 164 (2004) (design engineers could not be held liable for general negligence because they owed no duty of care to plaintiff property owners; courts have "invoked the concept of duty to limit [] the otherwise potentially infinite liability which would follow from every negligent act"); *In re Rezulin Litig.*, No. CV 03-1643-R(RZX), 2003 WL 25598915, at *1 (C.D. Cal. Apr. 28, 2003) (holding that a patent holder and clinical investigator of an allegedly defective prescription drug was fraudulently joined because he "owed no legal duty to any of the plaintiffs, and therefore, there [was] no possibility that the plaintiffs [could] prove a cause of action against [him]").

29.   These rulings make good sense.  Otherwise, every individual who had any role in the design of any component of any product, such as a vehicle, would potentially be liable for negligence any time an individual was injured using it.  Such an approach would result in limitless liability for millions of Americans who work in any capacity in which they provide input into the design or manufacturing of any products.  Accordingly, our legal system limits liability to the actual manufacturer of a product, which has a duty of care to those who buy its products.  *Morrow v. Wyeth*, No. B-05-209, 2005 U.S. Dist. LEXIS 43194, at *13-14 (S.D. Tex. Oct. 13, 2005) (noting that the law places liability on the manufacturer of an allegedly defective product, not on

---

from design defect strict liability," *Artiglio v. Superior Court*, 22 Cal. App. 4th 1388, 1397 (1994); *see also Hufft v. Horowitz*, 4 Cal. App. 4th 8, 19 (1992).  There is no contention anywhere in plaintiff's complaint that his Pinnacle Cup System was obtained other than by the services of a physician.

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTION 1441(b) (DIVERSITY)

1   the specific individuals involved in the design and manufacture of the product).  For this reason

2   too, Dr. Schmalzried is fraudulently joined.

3          30.    **Fraud-Based Claims.**  Plaintiff's claims against Dr. Schmalzried for intentional

4   misrepresentation and fraudulent concealment (collectively, plaintiff's "fraud-based claims") are

5   doomed to fail for three additional reasons:  (1) plaintiff does not identify a single statement made

6   by Dr. Schmalzried to him or his doctor that was allegedly deceptive; (2) plaintiff fails to establish

7   any connection between any actions by Dr. Schmalzried and his implantation with the Pinnacle

8   Cup System that could possibly satisfy the reliance/causation elements of his fraud-based claims;

9   and (3) plaintiff fails to allege a duty to disclose that would support a claim for fraudulent

10  concealment.

11         31.    A cause of action for intentional misrepresentation requires a plaintiff to prove,

12  *inter alia*, that the defendant engaged in a misrepresentation and that the plaintiff relied on it.  *See,*

13  *e.g.*, *Young v. Fluorotronics, Inc.*, No. 10cv976-WQH-BGS, 2010 U.S. Dist. LEXIS 117362, at

14  *22-23 (S.D. Cal. Nov. 3, 2010) ("[t]he . . . elements of a cause of action for [intentional

15  misrepresentation] are:  (1) a misrepresentation, which includes a concealment or nondisclosure;

16  (2) knowledge of the falsity of the misrepresentation, i.e., scienter; (3) intent to induce reliance on

17  the misrepresentation; (4) justifiable reliance; and (5) resulting damages").

18         32.    Importantly, the elements of plaintiff's fraud-based claims must be alleged with the

19  specificity required under Federal Rule of Civil Procedure 9(b).  *See, e.g.*, *Baltazar v. Apple, Inc.*,

20  No. CV-10-3231-JF, 2011 WL 588209, at *3 (N.D. Cal. Feb. 10, 2011) (holding that plaintiff

21  must satisfy the pleading requirements of Rule 9(b) in order to state a claim for negligent

22  misrepresentation); *BBG Props., Inc. v. Eaton*, 342 F. App'x 919, 920 (5th Cir. 2009) (affirming

23  trial court's refusal to remand case to state court where the plaintiff "had not stated its fraud claim

24  with sufficient particularity" as required by Rule 9(b)); *Kearns v. Ford Motor Co.*, 567 F.3d 1120,

25  1127 (9th Cir. 2009) (fraud claims based on concealment or nondisclosure "must be pleaded with

26  particularity under Rule 9(b)").

27         33.    Here, plaintiff has simply included boilerplate language in his Complaint, vaguely

28  stating that Dr. Schmalzried and "representatives of DePuy" met with unnamed physicians at

unidentified locations and times – with no specifics on what Dr. Schmalzried supposedly said to the unnamed doctors. (*See* Compl. ¶ 18.) Plaintiff also alleges that Dr. Schmalzried "authored marketing brochures" that contained false statements, but again fail to allege that the brochures were ever given to plaintiff or his physician – let alone allege why any of the quoted statements, nearly all of which merely describe research data regarding hip implants, is false. (*See id.* ¶¶ 23-24.) This falls far short of the requirements of Rule 9(b). *See Lemieux v. Litton Loan Servicing, LP*, No. 2:09-cv-02816-JAM-EFB, 2009 U.S. Dist. LEXIS 123833, at *10-11 (E.D. Cal. Dec. 21, 2009) (denying remand where plaintiffs alleged that misrepresentations were made by specific individuals "but [did] not identify specific representations or any factual detail about those representations" and this "generalized, boilerplate style of pleading [did] not satisfy Rule 8's notice-pleading requirements, let alone the heightened particularity requirement of Rule 9(b)") (internal quotation marks and citation omitted); *De Jose v. EMC Mortg. Corp.*, No. C-11-00139 JCS, 2011 U.S. Dist. LEXIS 57751, at *27 (N.D. Cal. Apr. 18, 2011) (similar). Indeed, such bare allegations are inadequate to establish even a "possibility" that plaintiff can recover against Dr. Schmalzried on his fraud-based claims. *See Aronis v. Merck & Co.*, No. CIV. S-05-0486 WBS DAD, 2005 WL 5518485, at *1 (E.D. Cal. May 3, 2005) (finding fraudulent joinder of a distributor where "plaintiff d[id] not allege that [the distributor] contributed in any way to her injuries"; "[t]o state a claim against a defendant, a plaintiff must allege a causal connection between the injury and the conduct of that defendant"); *see also BBG Props.*, 342 F. App'x at 920 (affirming trial court's refusal to remand case to state court where the plaintiff "had not stated its fraud claim with sufficient particularity" with regard to the non-diverse defendant as required under Rule 9(b)); *Druker v. Fortis Health*, No. 5:06-cv-00052, 2007 U.S. Dist. LEXIS 402, at *11-13 (S.D. Tex. Jan. 4, 2007) (finding fraudulent joinder where the plaintiff "failed to lodge any meaningful factual allegations" and did not allege specific material misrepresentations upon which he relied as required by Rule 9(b)).

34.     Plaintiff's fraudulent-concealment claim has no chance of success against Dr. Schmalzried for the additional reason that he did not owe plaintiff a duty to disclose. *See, e.g.*, *Milne Emps. Ass'n v. Sun Carriers, Inc.*, 960 F.2d 1401, 1408 (9th Cir. 1992) (claim for

1   "suppression of facts . . . generally requires a duty to disclose the concealed fact") (applying

2   California law).  A duty to disclose generally arises where there is a confidential or fiduciary

3   relationship between the parties.  *See, e.g.*, *Fulford v. Logitech, Inc.*, No. C-08-2041 MMC, 2009

4   WL 837639, at *1 (N.D. Cal. Mar. 26, 2009) (rejecting fraudulent-concealment claim because no

5   relationship – fiduciary or transactional – was alleged; "no duty to disclose can arise in the

6   absence of either a fiduciary duty or a transaction between the parties").  Here, plaintiff does not

7   allege that he had a confidential or fiduciary relationship with Dr. Schmalzried.  Indeed, he does

8   not allege any relationship or contact at all.  As such, there is no possibility that plaintiff can

9   succeed on his fraudulent-concealment claim against Dr. Schmalzried.

10         35.     For all of these reasons, there is no possibility plaintiff would prevail on any of his

11   claims against Dr. Schmalzried; accordingly, he is fraudulently joined.

12                 **(3)     There Is No Possibility That Liability Would Be Imposed On The**
                 **Distributor Defendants Under California Law.**

13

14         36.     Plaintiff's claims against the distributors would similarly be destined to fail even if

15   they were not preempted under federal law.

16         37.     As an initial matter, plaintiff's Complaint contains **no allegations whatsoever** tying

17   either of the distributor defendants to the Pinnacle Cup System implant plaintiff received.  Nor has

18   plaintiff provided any information for defendants to ascertain this information – e.g., the identity

19   of the hospital where he received his implant.  As set forth in the attached declarations, each of the

20   distributor defendants only operates in designated geographical regions within California.  *See*

21   Decl. of Bradford LaPoint ¶ 3, *Koplin v. DePuy Orthopaedics, Inc.*  (C.D. Cal. June 11, 2012)

22   (attached as Ex. 2); Decl. of Greg Switzer ¶ 3, *Koplin v. DePuy Orthopaedics, Inc.* (C.D. Cal. June

23   11, 2012) (attached as Ex. 3).  Thus, there is no basis to conclude that either of the distributor

24   defendants had any connection to plaintiff's device.  For this reason too, the distributor defendants

25   are fraudulently joined.  *Aronis*, 2005 WL 5518485, at *1 (finding fraudulent joinder where

26   plaintiff failed to allege that the in-state distributor ever handled the specific pills that allegedly

27   caused her injuries; "[t]o state a claim against a defendant, a plaintiff must allege a causal

28   connection between the injury and the conduct of that defendant"); *Devore v. Howmedica*

1  *Osteonics Corp.*, 658 F. Supp. 2d 1372, 1378 (M.D. Fla. 2009) ("Regardless of the theory which

2  liability is predicated upon, whether negligence, breach-of-warranty, strict liability in tort, or other

3  grounds, it is obvious that to hold a producer, manufacturer, or seller liable for injury caused by a

4  particular product, there must first be proof that the defendant produced, manufactured, sold or

5  was in some way responsible for the product") (citation omitted).

6       38.    The distributor defendants are also fraudulently joined because plaintiff's claims

7  against them are woefully inadequate. Each of the distributor defendants is mentioned ***only one***

8  ***time*** in plaintiff's entire Complaint – and that reference only identifies its alleged state of

9  residence. (*See* Compl. ¶¶ 11-12.) Plaintiff does not specify the nature of the distributors' alleged

10  misconduct or his basis for seeking to recover against them. Instead, he simply lumps all

11  "defendants" together in generic allegations that provide no explanation of why the distributor

12  defendants are allegedly liable to him. As other courts have held, such a dearth of allegations

13  against defendants is a tell-tale sign that they were fraudulently joined. *See Beavers v. DePuy*

14  *Orthopaedics, Inc.*, No. 1:11 dp 20275, 2012 WL 1945603 (N.D. Ohio May 30, 2012);

15       39.    In *Beavers*, for example, the plaintiffs sued DePuy, Johnson & Johnson, Johnson &

16  Johnson Services, Inc. (collectively "DePuy Defendants") and Orthopaedic Partners, LLC for

17  injuries allegedly caused by the ASR XL Acetabular System and the ASR Hip Resurfacing

18  System (collectively, "ASR Hip Implant Devices"). The DePuy Defendants removed the case to

19  federal court, arguing that the only non-diverse defendant, a distributor called Orthopaedic

20  Partners, LLC, was fraudulently joined. 2012 WL 1945603, at *1. Plaintiffs moved for remand,

21  asserting that they had pled a "colorable claim under Kentucky law" against Orthopaedic Partners,

22  LLC as measured by Kentucky's pleading standard. *Id.* at *2. The ASR MDL court disagreed,

23  holding that the plaintiffs' complaint was devoid of factual support to support plaintiffs' claims

24  against Orthopaedic Partners, LLC – and that the defendant was therefore fraudulently joined.

25       40.    According to Judge Katz, a federal court considering whether a defendant is

26  fraudulently joined should conduct its analysis under federal, not state, pleading standards. *Id.* at

27  *3-4 ("[f]ederal procedural rules apply to a civil action after it has been removed from a state

28  court," even pending "resolution of the district court's jurisdiction"). As such, in order for

1  plaintiffs to have stated a colorable claim against Orthopaedic Partners, LLC, they needed to assert

2  "factual allegations" sufficient "to raise a right to relief above the speculative level." *Id.* at *5

3  (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks

4  omitted).  "Conclusory allegations or legal conclusions masquerading as factual allegations

5  [would] not suffice." *Id.*

6         41.    After reviewing the plaintiffs' complaint, the court held that the plaintiffs'

7  "allegations against Orthopaedic Partners, LLC, [fell] well below the threshold required to meet

8  the plausibility standard required under *Twombly*." *Id.*  Although the plaintiffs' complaint was

9  "21 pages in length and contain[ed] 89 numbered paragraphs," Orthopaedic Partners, LLC was

10  only "mentioned twice." *Id.* at *4.  Moreover, those two allegations merely asserted the

11  defendant's principal place of business and that it was "engaged in the business of advertising,

12  promoting, labeling, selling, distributing, marketing, supplying and/or otherwise placing in the

13  stream of commerce the ASR Hip Implant Devices." *Id.* at *3-4 (internal quotation marks

14  omitted).  The remainder of the 89 paragraphs "fail[ed] to distinguish between the DePuy

15  Defendants' allegedly wrongful acts and those of Orthopaedic Partners, LLC." *Id.* at *5.

16  According to the court, this "lack of factual allegations regarding Orthopaedic Partners, LLC,

17  provide[d] no more than labels and conclusions insufficient to sustain viability of the legal

18  claims." *Id.*  Therefore, the plaintiffs "failed to state a claim against the non-diverse [d]efendant,"

19  and the court found Orthopaedic Partners, LLC "to be fraudulently joined" and dismissed it from

20  the case. *Id.*

21         42.    Plaintiff's pleadings here suffer from precisely the same flaws.  Because plaintiff

22  fails to assert "factual allegations" against the distributor defendants that would be sufficient "to

23  raise a right to relief above the speculative level," the distributor defendants are fraudulently

24  joined.

25     **B.**    **Amount In Controversy**

26         43.    Plaintiff claims that as a result of being implanted with the Pinnacle Cup System,

27  he suffered "severe pain" that allegedly "inhibited his ability to walk." (Compl. ¶ 27.)  Plaintiff

28

seeks general and special damages, including punitive and exemplary damages. (*See id.*, Prayer For Relief.)

44.     It is widely recognized that personal-injury claims facially meet the $75,000 jurisdictional threshold. *See, e.g., In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 296 (S.D.N.Y. 2001) (finding that a complaint alleging various injuries from taking a prescription drug "obviously asserts a claim exceeding $75,000"). In addition, compensatory and punitive damages in excess of the jurisdictional amount of $75,000 have been awarded in product-liability cases in California. *See, e.g., Stewart v. Union Carbide Corp.*, 190 Cal. App. 4th 23 (2010); *Karlsson v. Ford Motor Co.*, 140 Cal. App. 4th 1202 (2006); *Jones v. John Crane, Inc.*, 132 Cal. App. 4th 990 (2005).

45.     Other federal courts have similarly concluded that the amount in controversy exceeded $75,000 in pharmaceutical cases. *See, e.g., Smith v. Wyeth, Inc.*, 488 F. Supp. 2d 625, 630-31 (W.D. Ky. 2007) (denying motion to remand); *Copley v. Wyeth, Inc.*, No. 09-722, 2009 WL 1089663 (E.D. Pa. Apr. 22, 2009) (same).

46.     Given plaintiff's claim that he has suffered "severe pain" that allegedly "inhibited his ability to walk," and his request for punitive damages, it is evident that the amount in controversy exceeds $75,000.

## II.   REMOVING DEFENDANTS HAVE SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.

47.     DePuy and Johnson & Johnson Services, Inc. were each served with plaintiff's Complaint on September 17, 2014. Johnson & Johnson was served with plaintiff's Complaint on September 18, 2014. Accordingly, this Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b).

48.     The Superior Court of San Francisco County is located within the Northern District of California. *See* 28 U.S.C. § 84.

49.     None of the removing defendants is a citizen of the State of California, the State where this action was brought. *See* 28 U.S.C. § 1441(b).

50.     It is well settled that co-defendants who are fraudulently joined need not join in the removal. *See Borsuk v. Mass. Mut. Life Ins. Co.*, No. C 03-630 VRW, 2003 U.S. Dist. LEXIS 25259, at *7-8 (N.D. Cal. Sept. 4, 2003).  As set forth above, Dr. Schmalzried is fraudulently joined.  *See* Section I.A, above.  Therefore, he need not consent to removal.

51.     No previous application has been made for the relief requested herein.

52.     Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings and orders served upon removing defendants, which papers include the Complaint, are attached collectively as Exhibit 4.

53.     Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for plaintiff and a copy is being filed with the Clerk of the Superior Court of the County of San Francisco.

WHEREFORE, removing defendants respectfully remove this action from the Superior Court of the County of San Francisco, in the State of California, bearing Number CGC-14-541371, to this Court.

Respectfully submitted,

Dated:  October 17, 2014

**BARNES & THORNBURG LLP**

By: _____
        Alexander G. Calfo
        Kelley S. Olah
        Gabrielle J. Anderson-Thompson
        Attorneys for Defendants
        DEPUY ORTHOPAEDICS, INC.;
        JOHNSON & JOHNSON SERVICES,
        INC.; and JOHNSON & JOHNSON
        (erroneously sued as "Johnson & Johnson,
        Inc.")

16

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTION 1441(b) (DIVERSITY)

EXHIBIT 1

1  Ralph A. Campillo (Bar No. 70376)
2  Wendy A. Tucker  (Bar No. 121122)
   Michael M. Walsh (Bar No. 150865)
3  SEDGWICK LLP
4  801 South Figueroa Street, 19th Floor
   Los Angeles, CA 90017-5556
5  Telephone: 213.426.6900
6  Facsimile: 213.426.6921
   Email : ralph.campillo@sedgwicklaw.com
7          wendy.tucker@sedgwicklaw.com
8          michael.walsh@sedgwicklaw.com
   Attorneys for Defendant
9  THOMAS P. SCHMALZRIED, M.D.

10

11            UNITED STATES DISTRICT COURT
12    CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

13  ARMAND SANCHEZ, et al.,            CASE NO. CV 11-7867

14            Plaintiffs,             **DECLARATION OF DR. THOMAS
15                                    P. SCHMALZRIED**

16  vs.                              Judge:  Hon. Jacqueline H. Nguyen

17  DEPUY ORTHOPAEDICS, INC., et
18  al.,

19            Defendants.

20  CATHERINE SHELTON,               CASE NO. 2:11-cv-08082
21
22            Plaintiff,             **DECLARATION OF DR. THOMAS
                                     P. SCHMALZRIED**
23  vs.
                                     Judge:  Hon. Dean D. Pregerson
24  DEPUY ORTHOPAEDICS, INC., et
25  al.,

26            Defendants.
27

28                    Decl. of Dr. Thomas P. Schmalzried

                              1

Exhibit 1  - 00017

I, THOMAS P. SCHMALZRIED, pursuant to 28 U.S.C. § 1746, hereby

~~declare under penalty of perjury that the following statements are true and correct, to~~

the best of my knowledge and belief:

1.     I am a practicing orthopedic surgeon and the Medical Director of the Joint

Replacement Institute in Los Angeles, California.  I am also the principal for Thomas

P. Schmalzried, M.D., A Professional Corporation, a California corporation.

2.     I played no role in the manufacturing, packaging, labeling, regulatory

submissions, sales, inspection, distribution, and adverse event and complaint

reporting, handling or tracking for the Pinnacle Cup System.  I had no control or

influence over DePuy's manufacturing, packaging, labeling, regulatory, sales,

inspection, distribution and adverse event and complaint reporting, handling or

tracking decisions regarding the Pinnacle Cup System.

3.     I was one of eight surgeons selected by DePuy who provided assistance to

DePuy with the design of the Pinnacle Cup System.  DePuy determined the final

design specifications for the Pinnacle Cup System and the product labeling content.

4.     The DePuy brochure, "Advancing High Stability and Low Wear" was created

by DePuy.  My only contribution to this brochure was a general educational

summary (including references to thirty four scientific and medical articles as

support for the data in this summary), written at the request of DePuy, entitled "High

Stability, Low Wear Metal-on-Metal Bearings: Benefits, Risks, and Alternatives."

Exhibit 1  –  00018

As the title reflects, this paper discusses the benefits, risks and alternatives to metal-on-metal bearings.  The paper clearly outlines the special risks associated with all metal-metal bearings, and states my belief that "there is insufficient clinical data to demonstrate the overall superiority of any single bearing couple for all total hip patients" and "it is therefore reasonable to individualize the choice of bearing."  The only Pinnacle-specific data in this educational paper was provided by DePuy and clearly labeled as "DePuy Internal Data."

5.      I was not a part of DePuy's internal complaint handling system for the Pinnacle Cup System and thus was not notified if DePuy received such complaints.

6.      I have never made any representations or statements to any physicians, or to any member of the public, including plaintiff, regarding whether a specific DePuy orthopedic implant product was suitable for any specific patient.  That is a decision made by the patient's physician and not by me.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 10 / 27 , 2011.

THOMAS P. SCHMALZRIED, M.D.

Decl. of Dr. Thomas P. Schmalzried

3

Exhibit 1  — 00019

# EXHIBIT 2

JUN-11-2012 MON 09:17 HM Golden State Orthopaedic    FHA NO. 5105974221    F. 05

*Koplin*
*25-231*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

|  |  |
|---|---|
| JOAN KOPLIN and DONALD KOPLIN, | CASE NO. |
| Plaintiffs, | |
| vs. | JURY TRIAL DEMANDED |
| JOHNSON & JOHNSON SERVICES, INC.; JOHNSON & JOHNSON, INC.; DEPUY ORTHOPAEDICS, INC.; THOMAS SCHMALZRIED, M.D.; PINNACLE WEST ORTHOPAEDICS, INC.; GOLDEN STATE ORTHOPAEDICS, INC.; and DOES ONE through ONE HUNDRED, | |
| Defendants. | |

## DECLARATION OF BRADFORD LAPOINT

I declare under penalty of perjury that the following is true and correct:

1.      My name is Bradford LaPoint. I am over the age of twenty-one (21) years and am authorized to make this Declaration, which is based upon my personal knowledge. This Declaration is offered for use in support of the Notice of Removal filed by DePuy Orthopedics, Inc. ("DePuy"), Johnson & Johnson Services, Inc., and Johnson & Johnson in the above-referenced matter.

2.      I am the President of Golden State Orthopaedics, Inc. ("GSO"), a California corporation that distributes medical products for DePuy in portions of the State of California.

3.      I have reviewed the Complaint and Jury Demand in the matter of *Joan Koplin et al. v. Johnson & Johnson Services, Inc. et al.*, filed in the Superior Court of California, County of San Francisco, Civil Action No. CGC-12-520420, a copy of which is attached hereto as "Exhibit A." The Complaint does not identify the hospital where plaintiff's hip prosthesis was allegedly

implanted. GSO only serves as a distributor for DePuy in certain territories of California. Thus, it is impossible to determine from the Complaint whether GSO was the distributor for the hospital where plaintiff alleges she received the implant.

4.     GSO does not purchase Pinnacle hip prosthesis devices from DePuy; nor does it take title to or obtain an ownership interest in the prostheses. Rather, DePuy sells its products directly to hospitals.

5.     When a DePuy Pinnacle hip prosthesis device is obtained by a hospital through GSO, GSO receives the components in double-sealed sterile packages that are labeled, packaged, and sealed by DePuy. Those products are ultimately delivered to hospitals in the same sealed packaging, which usually consists of a cardboard box that was sealed and covered by a cellophane wrapper. The outside of the cardboard box is labeled with information unique to the particular orthopedic implant found within the sealed package and includes information such as the type of implant product, the size of the implant product and product identification numbers. Inside the cardboard box is a sealed package containing a second sealed sterile package that contains the orthopedic implant product. The outside of the first inner package has a label identical to the one located on the outside of the cardboard box. Inside this package is another sealed sterile package, which contains the implant product. In handling these packages, GSO does not break the sealed packaging, or alter in any manner the contents of the package or any labeling or markings on the cardboard box prior to delivery to the hospitals.

6.     At no time material to plaintiff's Complaint did GSO make payments to DePuy for Pinnacle hip prosthesis devices; nor did it receive payments from hospitals for any DePuy implants. GSO is not a party to any contract between any hospital and DePuy regarding the sale of any DePuy products.

7.     Neither I, personally, nor GSO had any knowledge of any manufacturing, design, or other defect in the Pinnacle hip prosthesis allegedly used by plaintiff's surgeon at any time material to plaintiffs' Complaint.

8.     GSO played no role in the research, design, manufacture, development, or testing of the Pinnacle hip prosthesis.

JUN-11-2012 MON 05:17 AM Golden State Orthopaedic          FAX NO. 5105514221              P. 07

9.      Neither I, personally, nor GSO drafted, compiled or generated the packaging, labeling, and/or language (including any instructions or warnings) used in the package inserts for the Pinnacle hip prosthesis.

10.     All marketing and promotional materials utilized by GSO relating to the Pinnacle hip prosthesis were generated by or for DePuy, and were provided to GSO by DePuy.

11.     GSO did not have any role in the regulatory or approval process for the Pinnacle hip prosthesis.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on June 11, 2012.

_____
Bradford LaPoint

Exhibit 2                    00022

# EXHIBIT 3

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| JOAN KOPLIN and DONALD KOPLIN, | CASE NO. |
| Plaintiffs, | |
| vs. | JURY TRIAL DEMANDED |
| JOHNSON & JOHNSON SERVICES, INC.; JOHNSON & JOHNSON, INC.; DEPUY ORTHOPAEDICS, INC.; THOMAS SCHMALZRIED, M.D.; PINNACLE WEST ORTHOPAEDICS, INC.; GOLDEN STATE ORTHOPAEDICS, INC.; and DOES ONE through ONE HUNDRED, | |
| Defendants. | |

DECLARATION OF GREG SWITZER

I declare under penalty of perjury that the following is true and correct.

1       My name is Greg Switzer. I am over the age of twenty-one (21) years and am authorized to make this Declaration, which is based upon my personal knowledge. This Declaration is offered for use in support of the Notice of Removal filed by DePuy Orthopaedics, Inc. ("DePuy"), Johnson & Johnson Services, Inc., and Johnson & Johnson in the above-referenced matter.

Exhibit 3  — 00023

2.      I am the President of Pinnacle West Orthopaedics, Inc. ("PWO"), a California corporation that distributed medical products for DePuy in portions of the State of California. PWO no longer represents DePuy.

3.      I have reviewed the Complaint and Jury Demand in the matter of *Joan Koplin et al. v. Johnson & Johnson Services, Inc., et al.,* filed in the Superior Court of California, County of San Francisco, Civil Action No. CGC-12-520420, a copy of which is attached hereto as "Exhibit A." The Complaint does not identify the hospital where plaintiff's hip prosthesis was allegedly implanted. PWO only served as a distributor for DePuy in certain territories of California. Thus, it is impossible to determine from the Complaint whether PWO was the distributor for the hospital where plaintiff alleges she received the implant.

4.      PWO did not purchase Pinnacle hip prosthesis devices from DePuy; nor did it take title to or obtain an ownership interest in the prostheses. Rather, DePuy sells its products directly to hospitals.

5.      When a DePuy Pinnacle hip prosthesis device was obtained by a hospital through PWO, PWO received the components in double-sealed sterile packages that were labeled, packaged, and sealed by DePuy. Those products were ultimately delivered to hospitals in the same sealed packaging, which usually consisted of a cardboard box that was sealed and covered by a cellophane wrapper. The outside of the cardboard box was labeled with information unique to the particular orthopedic implant found within the sealed package and included information such as the type of implant product, the size of the implant product and product identification numbers. Inside the cardboard box was a sealed package containing a second sealed sterile package that contained the orthopedic implant product. The outside of the first inner package had a label identical to the one located on the outside of the cardboard box. Inside this package was another sealed sterile package, which contained the implant product. In handling these packages, PWO did not break the sealed packaging, or alter in any manner the contents of the package or any labeling or markings on the cardboard box prior to delivery to the hospitals.

6.      At no time material to plaintiff's Complaint did PWO make payments to DePuy for Pinnacle hip prosthesis devices; nor did it receive payments from hospitals for any DePuy

Exhibit 3  – 00024

implants.  PWO was not a party to any contract between any hospital and DePuy regarding the sale of any DePuy products.

7.      Neither I, personally, nor PWO had any knowledge of any manufacturing, design, or other defect in the Pinnacle hip prosthesis allegedly used by plaintiff's surgeon at any time material to plaintiff's Complaint.

8.      PWO played no role in the research, design, manufacture, development, or testing of the Pinnacle hip prosthesis.

9.      Neither I, personally, nor PWO drafted, compiled or generated the packaging, labeling, and/or language (including any instructions or warnings) used in the package inserts for the Pinnacle hip prosthesis.

10.     All marketing and promotional materials utilized by PWO relating to the Pinnacle hip prosthesis were generated by or for DePuy, and were provided to PWO by DePuy.

11.     PWO did not have any role in the regulatory or approval process for the Pinnacle hip prosthesis.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on June 11, 2012

Greg Switzer

Exhibit 3  - 00025

EXHIBIT 4

SEP 17 2014  12:15

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Johnson & Johnson Services, Inc.; Johnson & Johnson, Inc; DePuy
Orthopaedics, Inc.; Thomas Schmalzried, M.D.; Pinnacle West Orthopaedics,
Inc.; Golden Sate Orhthopaedics, Inc.; and DOES One through One Hundred

**YOU ARE BEING SUED BY PLAINTIFF:**

*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
William Francis Condon III

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
*(El nombre y dirección de la corte es):*
San Francisco Superior Court
400 McAllister Street
San Francisco, CA 94102

CASE NUMBER *(Número del Caso):*
CGC - 14 - 541371

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Khaldoun A. Baghdadi / Spencer J. Pahlke (190111 / 250914)       Walkup Melodia Kelly & Schoenberger
650 California Street, 26th Floor       (415) 981-7210
San Francisco, CA 94108

DATE:       AUG 27 2014       CLERK OF THE COURT       Clerk, by       Victoria Gonzalez       , Deputy
*(Fecha)*       *(Secretario)*       *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):* DePuy Orthopaedics, Inc.
   under: ☑ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)       ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)       ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]       NorthWest ESSENTIAL FORMS™

SUMMONS

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

DePuy Pinnacle - 12335-Condon

Exhibit 4 - 00026

1

LAW OFFICES OF
WALKUP, MELODIA, KELLY & SCHOENBERGER
2                    A PROFESSIONAL CORPORATION

650 CALIFORNIA STREET, 26TH FLOOR
3          SAN FRANCISCO, CALIFORNIA 94108-2615
(415) 981-7210
4   KHALDOUN A. BAGHDADI (State Bar #190111)
SPENCER J. PAHLKE (State Bar #250914)
5   ATTORNEYS FOR PLAINTIFF

ENDORSED
F I L E D
Superior Court of California
County of San Francisco

AUG 27 2014

CLERK OF THE COURT
BY: __VICTORIA GONZALEZ__
Deputy Clerk

6              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

7                         COUNTY OF SAN FRANCISCO

8

9   WILLIAM FRANCIS CONDON III,                Case No.   CGC-14-541371

10                     Plaintiff,              COMPLAINT FOR DAMAGES

11  v.                                         (1) Strict Liability—Manufacturing Defect;
                                               (2) Strict Liability—Failure to Warn;
12  JOHNSON & JOHNSON SERVICES, INC.;          (3) Negligence—Design, Manufacture and
    JOHNSON & JOHNSON, INC.; DEPUY             Sale;
13  ORTHOPAEDICS, INC.; THOMAS                 (4) Negligence—Failure to Recall/Retrofit;
    SCHMALZRIED, M.D.; PINNACLE WEST           (5) Negligence—Failure to Warn;
14  ORTHOPAEDICS, INC.; GOLDEN STATE           (6) Fraud—Intentional Misrepresentation;
    ORTHOPAEDICS, INC.; and DOES ONE           (7) Fraud—Concealment
15  through ONE HUNDRED,                       (Punitive Damages)

16                     Defendants.             DEMAND FOR JURY TRIAL

17

18

19                              INTRODUCTION

20       1.       This products liability lawsuit stems from the failure of the "DePuy Pinnacle

System" (the "Pinnacle System"), which is a prosthetic hip implant device. The Pinnacle System
21
was designed to replace a patient's natural hip joint due to disease, deterioration, or fracture. The
22
hip joint, scientifically referred to as the acetabulofemoral joint, is the joint between the femur
23
(thigh bone) and acetabulum (hip socket) of the pelvis and its primary function is to support the
24
weight of the body in both static (i.e., standing) and dynamic (i.e., walking or running) postures.
25
The Pinnacle System suffers from similar design or manufacturing defects as the ASR System,
26
another hip implant system that defendants recalled on August 24, 2010, yet defendants continue
27
to sell the Pinnacle System without any warnings about the risks or the device failures that have
28
been reported to the company.

COMPLAINT FOR DAMAGES – CASE NO.

Exhibit 4 - 00027

2.    Plaintiff William Francis Condon III was implanted with the Pinnacle System on June 29, 2005. After implantation in plaintiff's body, the device failed as alleged below.

3.    Data and information that only recently became commonly known and publicly available show that the Pinnacle System had aberrant and high rates of loosening, failure, design defects, manufacturing defects, and dangerous metal debris release, which caused patients to develop complications to the point where they had to undergo "revision" surgeries. A revision surgery is a painful procedure during which some or all of the Pinnacle System components are surgically removed ("explanted") from the patient's body and replaced with new components. The revision of a Pinnacle System patient also often involves the removal of large amounts of tissue and bone that died because of complications related to defects in the device. Plaintiff alleges that problems and defects with the Pinnacle System, and defendants' other acts and omissions, some of which are presently unknown to plaintiff, were the cause of the failure of his Pinnacle System hip implant.

4.    Before the date of plaintiff's hip replacement surgeries, defendants knew that the ASR System, which suffers from the same or similar design and manufacturing defects as the Pinnacle System: was "too challenging" from the perspective of the implanting orthopedic surgeon, and knew that both systems presented abnormally high risks of early failure; generated unusual and dangerous levels of toxic metal debris in many patients' bodies; left the patient more susceptible to infection; had defects that caused a destructive process of the patient's bone and tissue; and caused other complications following implantation. Despite both actual and constructive notice of such problems and defects, defendants continued to market, sell, promote, and defend the defective Pinnacle System for years. Defendants warned neither doctors nor patients of unacceptable risks presented by the Pinnacle System; instead, defendants concealed the problems with each system and spread false information that the devices were safe. As a result, plaintiff was implanted with a defective device, developed painful and dangerous complications, had to undergo revision surgery, and will have lifelong residual problems.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

2
COMPLAINT FOR DAMAGES – CASE NO.

Exhibit 4 - 00028

## THE PARTIES

5.      Plaintiff underwent a left total hip replacement surgery on June 29, 2005 using the Pinnacle System.  The Pinnacle implant has failed, and plaintiff has undergone a revision surgery.  In plaintiff's hip surgery, plaintiff's surgeons and medical staff met or exceeded the applicable standard of care.

6.      Defendant Johnson & Johnson Services, Inc., is a corporation organized and existing under the laws of the State of New Jersey. Defendant Johnson & Johnson Services, Inc., is a subsidiary of defendant Johnson & Johnson, Inc.  At all times relevant to this action, defendant Johnson & Johnson Services, Inc., conducted business in the County of San Francisco, State of California.

7.      Defendant Johnson & Johnson, Inc., is a corporation organized and existing under the laws of the State of New Jersey.  Defendant Johnson & Johnson, Inc., is the parent company of defendants Johnson & Johnson Services, Inc., and DePuy Orthopaedics, Inc.  At all times relevant to this action, defendant Johnson & Johnson, Inc., has conducted business in County of San Francisco, State of California.

8.      Defendant DePuy Orthopaedics, Inc., is a corporation organized and existing under the laws of the State of Indiana.  At all times relevant to this action, defendant DePuy Orthopaedics, Inc., has conducted business in the County of San Francisco, State of California.

9.      Defendants Johnson & Johnson Services, Inc., Johnson & Johnson, Inc., and DePuy Orthopaedics, Inc., (hereafter, collectively, "DePuy") developed, manufactured, advertised, promoted, marketed, sold, and/or distributed the defective Pinnacle System throughout the United States, including the County of San Francisco.

10.      Defendant Thomas Schmalzried, M.D., (hereafter, "Dr. Schmalzried") is an individual.  Plaintiff is informed and believes and thereon alleges that he resides in Los Angeles County, State of California.

////

////

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA  94108
(415) 981-7210

Exhibit 4 - 00029

11.     Defendant Pinnacle West Orthopaedics, Inc., is a corporation organized and existing under the laws of the State of California. At all times relevant to this action, said defendant has had the State of California as its principal place of business.

12.     Defendant Golden State Orthopaedics, Inc., is a corporation organized and existing under the laws of the State of California. At all times relevant to this action, said defendant has had the State of California as its principal place of business.

13.     The true names and capacities, whether individual, corporate, or otherwise of Does One through One Hundred, inclusive, are presently unknown to plaintiff, who therefore sues them by fictitious names. Plaintiff is informed and believes, and upon such information and belief alleges, that each of said defendants is, negligently or otherwise, legally responsible in some manner for the events and happenings herein alleged, either as manufacturers, suppliers, sellers, or distributors and that said defendants, negligently or otherwise, acted or omitted to act in one or more of said occupations or businesses and that such negligence or other basis of liability legally caused the injuries and damages hereinafter set forth. Plaintiff prays leave to amend this Complaint to assert herein the true names, capacities, functions, occupations, and businesses, along with the factual basis for liability of said defendants, when the same are ascertained.

14.     Plaintiff is informed and believes, and upon such information and belief alleges that, at all times and places mentioned herein, defendants, and each of them, were the agents, ostensible agents, co-conspirators, servants, employees, partners, joint venturers, affiliates, franchisees, and/or alter egos of the remaining defendants, and each of them, and that each of them were at all times and places mentioned herein acting in concert and within the purpose and scope of such conspiracy, service, agency, ostensible agency, employment, partnership, joint venture, affiliation, and/or franchise.

## THE DePUY PINNACLE SYSTEM

15.     The Pinnacle System implanted in plaintiff is a metal-on-metal device, as the device's ball-shaped metal femoral head was designed to articulate directly against an acetabular cup with a metal liner.

////

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

Exhibit 4 - 00030

16.     The Pinnacle System suffers from a similar design or manufacturing defect as the ASR Hip System.  While the exact nature of the common defect is still being investigated, plaintiff believes that both hip implants suffer from one or more similar design or manufacturing defects that cause excessive amounts of cobalt and chromium to wear and chip from the surface of the acetabular liner, or from the femoral head, or from the taper area between the femoral component and femoral ball.  These cobalt and chromium fragments prompt the body to react by rejecting the debris. This rejection often manifests with symptoms of pain, looseness, dislocation, and squeaking and popping sounds.  Inside the hip joint, the metal reaction often causes fluids to accumulate and soft tissues, muscle, ligaments, and bone to die.

17.     The design of the Pinnacle System was not sufficiently tested by the defendants, and it was never approved by the FDA as being safe or effective for the products' intended purpose.

18.     Together with the other defendants, defendant Schmalzried was integral to parts of the design, manufacture, and sale of the Pinnacle System, and these defendants' promotion of the Pinnacle System was a necessary factor in bringing the product to the market and selling it to plaintiff and plaintiff's treating healthcare professionals.  For example, on numerous occasions, Schmalzried met with orthopedic surgeons to promote the Pinnacle System Implant.  At some or all of these meetings, a representative or representatives of DePuy was present.  During these meetings, Schmalzried and the DePuy representatives assured the orthopedic surgeons that the Pinnacle System was safe, was the best product on the market, had an excellent track record, and had a low and acceptable failure rate.  Schmalzried and the DePuy representatives continued to "defend" the Pinnacle System Implant even after they became aware of numerous and serious complications with the Pinnacle System.  Schmalzried and the DePuy representatives did not reveal (and instead concealed) their knowledge of numerous and serious complications and other "bad data" during their meetings with orthopedic surgeons.

19.     It also was not long after the defendants launched the Pinnacle System that reports of failures began flooding into each of the defendants.  For example, on May 4, 2002, the defendants received a complaint that a patient had to undergo a surgery to remove and replace the

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA  94108
(415) 981-7210

5

COMPLAINT FOR DAMAGES – CASE NO.

Exhibit 4 - 00031

hip implant because the liner disassociated with the cup. DePuy closed its investigation of this complaint, finding that "corrective action is not indicated." Two weeks later, on May 17, 2002, the defendants received another report that another patient had to undergo surgery to remove and replace a defective hip implant because the acetabular cup had loosened. Again, DePuy closed its investigation of this complaint, finding that "corrective action is not indicated."

20.     The defendants would go on to receive hundreds of similar complaints reporting that the Pinnacle System had failed due to premature loosening of the acetabular cup and that the failure had forced patients to undergo painful and risky surgeries to remove and replace the failed hip component. Reports to the defendants that the Pinnacle System has failed are skyrocketing. For example, by the end of 2008, defendants had received more than 430 reports and by the end of 2009, that number had increased to almost 750. To date, the defendants have received more than 2,500 reports claiming that the Pinnacle System failed.

21.     On or before June 29, 2005, the date plaintiff's left hip was replaced with the Pinnacle System, defendants had received numerous complaints related to the device. Consequently, each of the defendants was fully aware that the Pinnacle System was defective and that dozens of patients already had been injured by that defect. Based on this information, the defendants should have recalled the Pinnacle System before plaintiff's June 29, 2005 surgery. At minimum, the defendants should have stopped selling the defective implant when they became aware that it had catastrophically failed in several patients.

22.     Despite their knowledge that the Pinnacle System had a defect and that it had failed hundreds of times, causing hundreds of patients to undergo revision surgery, the defendants continued to sell the defective hip implant. In so doing, the defendants actively concealed the known defect from doctors and patients—including plaintiff and plaintiff's doctor—and misrepresented that that the Pinnacle System was a safe and effective medical device.

23.     As numerous failures of the Pinnacle System Implant were reported to each of the defendants, including DePuy and Schmalzried, they continued to actively promote, market and defend the defective products. For example, Schmalzried authored many marketing brochures for DePuy touting the safety and durability of metal-on-metal implants and specifically, the Pinnacle

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

6
COMPLAINT FOR DAMAGES – CASE NO.

Exhibit 4 - 00032

1  System. These brochures containing Schmalzried's endorsements were given to doctors around

2  the world to encourage them to use the Pinnacle System. In the brochure titled "Advancing High

3  Stability and Low Wear," Schmalzried made several false representations about the quality and

4  safety of the Pinnacle System. For example, he said:

- "Modular acetabular components, such as Pinnacle™, have the advantage of a high stability, low wear metal or crosslinked polyethylene bearing within the same construct."

- "There is no mystery regarding the allure of metal-on-metal bearings: 1) larger diameter bearings have greater stability and 2) when properly positioned, the wear rate has been documented to be very low in vivo for three decades."

- "The wear of a well-made and well-mated metal-on-metal bearing is very low and decreases as the diameter increases."

24.  Despite their knowledge that the Pinnacle System was defective, Schmalzried also

made several false representations about specific design elements of the Pinnacle System that he

claimed made it superior to other more safe hip implants on the market. For example, he said:

- "Given that the material has high carbon content, metallurgy has little effect on bearing wear."

- "Low-carbon materials exhibit higher wear than high carbon materials."

- "There is little difference in the wear of high-carbon wrought or cast materials."

- "Initial running-in wear decreases as the bearing diameter increases and/or the diametrical clearance decreases."

- "Lower clearance has been associated with lower ion levels in vivo."

25.  The defendants' reason to conceal the defects in its Pinnacle System is clear. In

2009 alone, DePuy brought in more than $5.4 billion in sales and Schmalzried received more than

$2 million in payments from DePuy. Hip implant sales are critically important to DePuy's parent

company, Johnson & Johnson, and DePuy is one of Johnson & Johnson's most profitable business

groups. The defendants were faced with a critical defect in two of their hip implant systems. The

last thing the defendants wanted to do was to admit that these popular products had a critical

defect that could cause a premature failure, forcing patients to have to undergo another painful

surgery. Focused on corporate profits, and at the expense of patient safety, each of the defendants

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

7
COMPLAINT FOR DAMAGES – CASE NO.

Exhibit 4 - 00033

1   decided that they would continue to promote, market, and sell the Pinnacle System despite the fact

2   that they each knew the product was defective.

3       26.     DePuy still has not recalled the Pinnacle System, and it continues to sell this

4   defective product to unsuspecting patients without any warning about the risks or the failures that

5   have been reported to the company.

6                    PLAINTIFF'S REPLACEMENT AND REVISION SURGERIES

7       27.     On June 29, 2005, plaintiff underwent a left total hip replacement procedure using

8   the Pinnacle System.  As a result of the design, manufacture and composition of that device, and

9   its accompanying warnings and instructions (or lack thereof), the acetabular cup eventually

10  detached, disconnected, created metallic debris, and/or loosened from plaintiff's acetabulum,

11  caused severe pain, inhibited plaintiff's ability to walk, and required revision surgery.  The left hip

12  implant was revised on September 25, 2013.

13      28.     As a direct and legal consequence of the Pinnacle System, and the device's defects

14  as described herein, plaintiff was required to live with debilitating pain, suffer inhibition of the

15  ability to walk, and was required to undergo and recover from painful hip revision surgery.

16                                   FIRST CAUSE OF ACTION
                                [Strict Liability—Manufacturing Defect]
17

18  For a First Cause of Action, plaintiff complains of defendants and alleges as follows:

19      29.     Plaintiff hereby incorporates by reference paragraphs 1 through 28 herein, as

20  though alleged fully in this Cause of Action.

21      30.     Prior to, on, and after the date of plaintiff's hip replacement surgeries, and at all

22  relevant times, defendants designed, distributed, manufactured, sold, and marketed the Pinnacle

23  System for implantation into consumers, such as plaintiff, by physicians and surgeons in the

24  United States.

25      31.     At all times herein mentioned, the defendant designed, distributed, manufactured,

26  marketed, and sold the above-described the Pinnacle System, which was implanted in plaintiff,

27  such that they were dangerous, unsafe, and defective in manufacture. Said defects included, but

28  were not limited to, the fact that the acetabular cup in both systems had a tendency to detach,

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA  94108
(415) 981-7210

Exhibit 4 - 00034

1   disconnect, and/or loosen from a patient's acetabulum, cause pain, inhibit walking, and require

2   revision surgery. Said defects also included causing both systems to generate dangerous and

3   harmful levels of metal debris in the patient's body.

4       32.    Plaintiff is informed and believes, and on that basis alleges, that the Pinnacle

5   System implanted in plaintiff contained manufacturing defects, in that they differed from the

6   manufacturer's design or specifications, or from other typical units of the same product line.

7       33.    Plaintiff's physicians employed the Pinnacle System in the manner in which each

8   system was intended to be used, making such use reasonably foreseeable to defendants.

9       34.    As a direct and legal result of defendant's design, manufacture, marketing, and sale

10   of the Pinnacle System prior to, on, and after the date of plaintiff's hip replacement surgeries,

11   plaintiff suffered the injuries herein described.

12       35.    Defendants' design, manufacture, marketing, promotion, defense, and sale of the

13   Pinnacle System was a substantial factor in causing plaintiff's injuries, as described herein.

14       36.    By reason of the premises, and as a direct and legal result of defendants' design,

15   distribution, manufacture, marketing, and sale of the Pinnacle System, plaintiff suffered acetabular

16   cup detachment, disconnection, creation of metallic debris, and/or loosening, pain, inhibition of

17   the ability to walk, unnecessary and additional surgery, and other injuries presently undiagnosed.

18       37.    By reason of the premises, and as a direct and legal result thereof, it became

19   necessary for plaintiff to incur expenses for doctors, hospitals, surgeries, nurses, and other

20   reasonably required and medically necessary supplies and services, which said services are still

21   continuing. Plaintiff prays leave to amend this Complaint to insert these elements of damage in

22   this respect when the same are finally determined.

23       38.    By reason of the premises, and as a direct and legal result thereof, plaintiff has been

24   unable at times to attend regular employment, and plaintiff's earning capacity has been diminished

25   to plaintiff's special damage in a presently unascertained sum as said loss is not yet finally

26   determined. Plaintiff prays leave to amend this Complaint to insert these elements of damage in

27   this respect when the same are finally determined.

28

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

9
COMPLAINT FOR DAMAGES – CASE NO.

Exhibit 4 - 00035

39.     By reason of the premises, and as a direct and legal result thereof, plaintiff has suffered and sustained general (non-economic) damages in a sum in excess of the minimum jurisdictional limits of this Court.

WHEREFORE, plaintiff demands judgment against defendants as hereinafter set forth.

## SECOND CAUSE OF ACTION
[Strict Liability—Failure to Warn]

Plaintiff complains of defendants and for a Second Cause of Action alleges as follows:

40.     Plaintiff hereby incorporates by reference paragraphs 1 through 39 herein, as though alleged fully in this Cause of Action.

41.     Prior to, on, and after the date of plaintiff's hip replacement surgeries, and at all relevant times, defendants manufactured, distributed, and sold the Pinnacle System for implantation into consumers, such as plaintiff, by physicians and surgeons in the United States.

42.     The Pinnacle System had potential risks and side effects that were known or knowable to defendants by the use of scientific knowledge available before, at, and after the time of manufacture, distribution, and sale of each system. Defendants knew or should have known of the defective condition, characteristics, and risks associated with said products, as previously set forth herein.

43.     The Pinnacle System that was manufactured, distributed, and sold by the defendants to plaintiff were in a defective condition that was unreasonably and substantially dangerous to any user or ordinary consumer of the device, such as plaintiff. Such ordinary consumers, including plaintiff, would not and could not have recognized or discovered the potential risks and side effects of the Pinnacle System as set forth herein.

44.     The warnings and directions provided with the Pinnacle System by defendant failed to adequately warn of the potential risks and side effects of each system and the dangerous propensities of said medical devices, which risks were known or were reasonably scientifically knowable to defendants.

45.     Defendants' Pinnacle System components were expected to and did reach plaintiff and plaintiff's physicians without substantial change in their condition as manufactured,

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

10
COMPLAINT FOR DAMAGES – CASE NO.

Exhibit 4 - 00036

1  distributed, and sold by defendants. Additionally, plaintiff's physicians used the Pinnacle System

2  in the manner in which each system was intended to be used, making such use reasonably

3  foreseeable to defendants.

4      46.    As a direct and legal result of defendants' manufacture, distribution, and sale of the

5  Pinnacle System, plaintiff suffered the injuries herein described.

6      47.    Defendants' lack of sufficient instructions or warnings prior to, on, and after the

7  date of plaintiff's hip replacement surgeries was a substantial factor in causing plaintiff's injuries

8  and damages, as described herein.

9      WHEREFORE, plaintiff demands judgment against defendants as hereinafter set forth.

10                        **THIRD CAUSE OF ACTION**
                  [Negligence—Design, Manufacture and Sale]
11

12  Plaintiff complains of defendants and for a Third Cause of Action alleges as follows:

13      48.    Plaintiff hereby incorporates by reference paragraphs 1 through 47 herein, as

14  though alleged fully in this Cause of Action.

15      49.    Prior to, on, and after the date of plaintiff's hip replacement surgeries, and at all

16  relevant times, defendants designed, tested, distributed, manufactured, advertised, sold, and

17  marketed the Pinnacle System for implantation into consumers, such as plaintiff, by physicians

18  and surgeons in the United States.

19      50.    Prior to, on, and after the date of plaintiff's hip replacement surgeries, the

20  defendants were negligent and careless in and about their design, testing, distribution,

21  manufacture, advertising, sale, and marketing of the above-described Pinnacle System.

22      51.    Prior to, on, and after the date of plaintiff's hip replacement surgeries, the

23  defendants performed inadequate evaluation and testing of the Pinnacle System where such

24  evaluation and testing would have revealed the propensity of the each system's acetabular cup to

25  detach, disconnect, create metallic debris, and/or loosen from the acetabulum, and to cause pain,

26  inhibition of the ability to walk, and require revision surgery.

27      52.    Prior to, on, and after the date of plaintiff's hip replacement surgeries, the

28  defendants had received complaints from healthcare providers that the Pinnacle System caused

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

11
COMPLAINT FOR DAMAGES – CASE NO.

Exhibit 4 - 00037

1   serious complications including detachment, disconnection, creation of metallic debris, and/or

2   loosening of the acetabular cup from the acetabulum, but defendants consciously decided not to:

3   perform any further testing on the Pinnacle System; investigate the root cause of these

4   complications; suspend sales and distribution; or warn physicians and patients of the propensity of

5   the device's acetabular cup to detach, disconnect, create metallic debris, and/or loosen from the

6   acetabulum.

7       53.     As a direct and legal result of the above-described negligence in design, testing,

8   distribution, manufacture, advertising, sales, and marketing, plaintiff suffered the injuries herein

9   described.

10      54.     Defendants' negligence in design, testing, distribution, manufacture, advertising,

11  sales, and marketing prior to, on, and after the date of plaintiff's hip replacement surgeries was a

12  substantial factor in causing plaintiff's injuries and damages, as described herein.

13      WHEREFORE, plaintiff demands judgment against defendants as hereinafter set forth.

14                          **FOURTH CAUSE OF ACTION**
15                      [Negligence—Failure To Recall/Retrofit]

16  Plaintiff complains of defendants and for a Fourth Cause of Action alleges as follows:

17      55.     Plaintiff hereby incorporates by reference paragraphs 1 through 54 herein, as

18  though alleged fully in this Cause of Action.

19      56.     Prior to, on, and after the date of plaintiff's hip replacement surgeries, and at all

20  relevant times, defendants designed, distributed, manufactured, sold, and marketed the Pinnacle

21  System for implantation into consumers, such as plaintiff, by physicians and surgeons in the

22  United States.

23      57.     Prior to, on, and after the date of plaintiff's hip replacement surgeries, defendants

24  knew or reasonably should have known that the Pinnacle System, and each system's warnings

25  were dangerous or were likely to be dangerous when used in a reasonably foreseeable manner.

26      58.     Prior to, on, and after the date of plaintiff's hip replacement surgeries, defendants

27  became aware of the defects of the Pinnacle System, including the propensity of the system's

28  acetabular cup to detach, disconnect, create metallic debris, and/or loosen from the acetabulum.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

12
COMPLAINT FOR DAMAGES – CASE NO.

Exhibit 4 - 00038

59.     Defendants failed to recall, retrofit, or warn patients or physicians about the danger of the Pinnacle System prior to, on, and after the date of plaintiff's hip replacement surgeries. Defendants have thus far failed to recall the Pinnacle System.

60.     In light of the severity and amount of the complaints transmitted to defendants and the additional available data, reasonable manufacturers and distributors under the same or similar circumstances would have recalled or retrofitted the Pinnacle System, and would thereby have avoided and prevented harm to hundreds or thousands of patients.

61.     As a direct and legal result of the above-described negligent failure to recall or retrofit, plaintiff suffered the injuries herein described.

62.     Defendants' negligent failure to recall or retrofit the Pinnacle System and its warnings was a substantial factor in causing plaintiff's injuries and damages, as described herein.

WHEREFORE, plaintiff demands judgment against defendants as hereinafter set forth.

### FIFTH CAUSE OF ACTION
[Negligence—Failure to Warn]

Plaintiff complains of defendants and for a Fifth Cause of Action alleges as follows:

63.     Plaintiff hereby incorporates by reference paragraphs 1 through 62 herein, as though alleged fully in this Cause of Action.

64.     Prior to, on, and after the date of plaintiff's hip replacement surgeries, and at all relevant times, defendants designed, distributed, manufactured, sold, and marketed the Pinnacle System for implantation into consumers, such as plaintiff, by physicians and surgeons in the United States.

65.     Prior to, on, and after the date of plaintiff's hip replacement surgeries, defendants knew or should have known that the Pinnacle System were dangerous or were likely to be dangerous when used in a reasonably foreseeable manner.  Such danger included the propensity of the acetabular cup in each system to detach, disconnect, create metallic debris, and/or loosen from a patient's acetabulum, cause pain, inhibit walking, and require revision surgery.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

13

Exhibit 4 - 00039

66.     Prior to, on and after the date of plaintiff's hip replacement surgeries, defendants knew or reasonably should have known that the users of the Pinnacle System, including plaintiff, would not realize the dangers presented by each device.

67.     Prior to, on, and after the date of plaintiff's hip replacement surgeries, defendants failed to adequately warn of the dangers presented by the Pinnacle System and/or failed to instruct on the safe use of each device.  Such failures to warn and/or instruct included, but were not limited to: failing to advise of the known or knowable risks, dangers and side effects associated with the use of the Pinnacle System; failing to properly advise of the means and methods available for the elimination of the risks, dangers, and side effects associated with the Pinnacle System, including acetabular cup detachment, trunion wear, disconnection, creation of metallic debris, and/or loosening from the acetabulum; failing to warn physicians about the risks, dangers, and side effects associated with the Pinnacle System, including the rate of acetabular cup detachment, disconnection, creation of metallic debris, and/or loosening from the acetabulum, as well as associated complications; and failing to warn consumers about the risks, dangers, and side effects associated with the Pinnacle System, including the rate of acetabular cup detachment, disconnection, creation of metallic debris, and/or loosening from the acetabulum, as well as associated complications, and the signs and symptoms of detachment, disconnection, creation of metallic debris, loosening and/or associated complications for which medical attention should be sought.

68.     Reasonable manufacturers and reasonable distributors, under the same or similar circumstances as those of defendants' prior to, on, and after the date of plaintiff's hip replacement surgeries, would have warned of the dangers presented by the Pinnacle System, or instructed on the safe use of each system.

69.     Prior to the date of plaintiff's hip replacement surgeries, the Pinnacle System had already caused numerous instances of the acetabular cup becoming detached, disconnected, and/or loosened from patients' acetabulae, along with associated creation of metallic debris.  Defendants consciously decided neither to warn physicians and patients of the either system's increased

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA  94108
(415) 981-7210

14
COMPLAINT FOR DAMAGES – CASE NO.

Exhibit 4 – 00040

1 | propensity to cause these serious complications, nor of the signs and symptoms of these

2 | complications.

3 |      70.    Defendants' negligent failure to warn prior to, on, and after the date of plaintiff's

4 | hip replacement surgeries was a substantial factor in causing plaintiff's injuries and damages, as

5 | described herein.

6 |      WHEREFORE, plaintiff demands judgment against defendants as hereinafter set forth.

7 | **SIXTH CAUSE OF ACTION**
**[Fraud—Intentional Misrepresentation]**

8 |

9 |      Plaintiff complains of defendants and for a Sixth Cause of Action alleges as follows:

10 |      71.    Plaintiff hereby incorporates by reference paragraphs 1 through 70 herein, as

11 | though alleged fully in this Cause of Action.

12 |      72.    Defendants knowingly and intentionally represented to plaintiff, plaintiff's

13 | healthcare providers, and the public that the Pinnacle System was safe for use and that defendants'

14 | labeling, marketing, and promotional materials fully described all known risks associated with the

15 | Pinnacle System.  Said representations were of facts that were material and important to plaintiff's

16 | decision to use the Pinnacle System.

17 |      73.    Defendants knowing and intentional representations of material facts that proved

18 | false include, but are not limited to, the following:

19 |      a.    That the Pinnacle System's acetabular cup coverage over the femoral

20 | components would not cause problems such as edge loading;

21 |      b.    That the Pinnacle System's small designed tolerance between cup and ball

22 | was advantageous and would not cause problems;

23 |      c.    That the Pinnacle System would not have increased metal-on-metal wear

24 | between the femoral component and the acetabular cup as compared to other metal-on-metal

25 | products;

26 |      d.    That the Pinnacle System's trunion would not wear;

27 |      e.    That the Pinnacle System could be surgically implanted according to

28 | recommended specifications;

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA  94108
(415) 981-7210

15

COMPLAINT FOR DAMAGES – CASE NO.

Exhibit 4 - 00041

1              f.        That the Pinnacle System's size tolerances were within acceptable industry

2  standards;

3              g.       That the Pinnacle System was safe and effective for all patients, when in

4  fact it was not;

5              h.       That the Pinnacle System was safer or more effective than other hip implant

6  systems; and

7              i.        That the Pinnacle System was more suitable for younger, active people.

8      74.     Defendants' representations were false.  The Pinnacle System was not safe for use,

9  and defendants' labeling, marketing and promotional materials did not fully describe all known

10  risks of the products.

11      75.     When defendants made said representations, defendants either knew that said

12  representations were false or made said representations recklessly and without regard for their

13  truth.

14      76.     When defendants made said representations, defendants intended that plaintiff and

15  plaintiff's healthcare providers would rely on said representations.

16      77.     Plaintiff and plaintiff's healthcare providers reasonably and justifiably relied on

17  defendants' representations that the Pinnacle System was safe for use and that the system's

18  labeling, marketing, and promotional materials fully described all known risks associated with the

19  Pinnacle System.

20      78.     As a result of said representations, plaintiff suffered the injuries and damages

21  described herein.

22      79.     Plaintiff's reliance on said representations made by defendants was a substantial

23  factor in causing plaintiff to suffer the injuries and damages described herein.

24      WHEREFORE, plaintiff demands judgment against defendants as hereinafter set forth.

25  ////

26  ////

27  ////

28

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO CA 94108
(415) 981-7210

Exhibit 4 – 00042

### SEVENTH CAUSE OF ACTION
[Fraud—Concealment]

Plaintiff complains of defendants and for a Seventh Cause of Action alleges as follows:

80.    Plaintiff hereby incorporates by reference paragraphs 1 through 79 herein, as though alleged fully in this Cause of Action.

81.    In marketing and selling the Pinnacle System, defendants concealed material facts from plaintiff and plaintiff's healthcare providers.  Said concealment included some or all of the following: disclosure of some facts to plaintiff and plaintiff's healthcare providers but intentional failure to disclose other important facts, making said disclosure deceptive; intentionally failing to disclose important facts known only to defendants and that plaintiff and plaintiff's healthcare providers could not have discovered; and/or actively concealing important facts from plaintiff or plaintiff's healthcare providers, or preventing plaintiff or plaintiff's healthcare providers from discovering said important facts.

82.    Defendants' concealed material facts include, but are not limited to, the following:

a.    That the Pinnacle System's acetabular cup coverage over the femoral components would cause problems such as edge loading;

b.    That the Pinnacle System had increased metal-on-metal wear between the femoral component and the acetabular cup as compared to other metal-on-metal products;

c.    That the Pinnacle System could not be surgically implanted according to recommended specifications;

d.    That the Pinnacle System's size tolerances were not within acceptable industry standards;

e.    That the Pinnacle System was not safe and effective for all patients;

f.    That the Pinnacle System was not as safe or effective as other hip implant systems; and

g.    That the Pinnacle System was not suitable for younger, active people.

83.    Plaintiff and plaintiff's healthcare providers were not aware of these and other facts concealed by defendants.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

17
COMPLAINT FOR DAMAGES – CASE NO.

Exhibit 4 - 00043

84.     In concealing these and other facts, defendants intended to deceive plaintiff and plaintiff's healthcare providers by concealing said facts.

85.     Plaintiff and plaintiff's healthcare providers reasonably and justifiably relied on defendants' concealment and deception.

86.     As a result of said concealment, plaintiff suffered the injuries and damages described herein.

87.     Defendants' concealment was a substantial factor in causing plaintiff to suffer the injuries and damages described herein.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment against the defendants as follows:

1.     For general (non-economic) damages according to proof at the time of trial;

2.     For special (economic) damages according to proof at the time of trial;

3.     For punitive and exemplary damages in an amount sufficient to punish and deter;

4.     For prejudgment interest as permitted by law;

5.     For attorneys' fees;

6.     For costs of suit incurred herein as permitted by law; and

7.     For such other and further relief as this Court may deem proper.


Dated: August 26, 2014

WALKUP, MELODIA, KELLY & SCHOENBERGER


KHALDOUN A. BAGHDADI
SPENCER J. PAHLKE
Attorneys for Plaintiff

////

////

////

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

18

COMPLAINT FOR DAMAGES – CASE NO.

Exhibit 4 - 00044

1

2                          <u>DEMAND FOR JURY TRIAL</u>

3         Plaintiff hereby demands a trial by jury.

4    Dated: August 26, 2014                WALKUP, MELODIA, KELLY & SCHOENBERGER

5

6                                                               MDD

7                                          KHALDOUN A. BAGHDADI
8                                          SPENCER J. PAHLKE
                                           Attorneys for Plaintiff
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

Exhibit 4 - 00045

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Khaldoun A. Baghdadi / Spencer J. Pahlke (190111/250914)
Walkup Melodia Kelly & Schoenberger
650 California Street, 26th Floor
San Francisco, CA 94108
TELEPHONE NO.: (415) 981-7210   FAX NO.: (415) 391-6965
ATTORNEY FOR (Name): Plaintiff William Francis Condon

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME: Unlimited Jurisdiction

CASE NAME: Condon v. Johnson & Johnson

FOR COURT USE ONLY

ENDORSED
F I L E D
Superior Court of California
County of San Francisco

AUG 2 7 2014

CLERK OF THE COURT
BY: VICTORIA GONZALEZ
Deputy Clerk

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [X] Unlimited   [ ] Limited (Amount demanded exceeds $25,000) (Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder   Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | CGC-14-541371  JUDGE:  DEPT.: |

Items 1-6 below must be completed (see instructions on page 2).

1. Check one box below for the case type that best describes this case:

Auto Tort
[ ] Auto (22)
[ ] Uninsured motorist (46)

Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort
[ ] Asbestos (04)
[X] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

Non-PI/PD/WD (Other) Tort
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

Employment
[ ] Wrongful termination (36)
[ ] Other employment (15)

Contract
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

Real Property
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

Unlawful Detainer
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

Judicial Review
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

Enforcement of Judgment
[ ] Enforcement of judgment (20)

Miscellaneous Civil Complaint
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

Miscellaneous Civil Petition
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [X] is   [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
a. [ ] Large number of separately represented parties
b. [X] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
c. [ ] Substantial amount of documentary evidence
d. [X] Large number of witnesses
e. [X] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [X] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [X] punitive
4. Number of causes of action (specify): Seven
5. This case [ ] is   [X] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: 08/27/14

Khaldoun A. Baghdadi                                          M.B.D
(TYPE OR PRINT NAME)                          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

NOTICE
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]
Martin Dean's
ESSENTIAL FORMS™
CIVIL CASE COVER SHEET
Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

DePuy Pinnacle-12335-Condon

Exhibit 4 – 00046

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

To Plaintiffs and Others Filing First Papers. If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

To Parties in Rule 3.740 Collections Cases. A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

To Parties in Complex Cases. In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)-Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
　Asbestos Property Damage
　Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
　Medical Malpractice– Physicians & Surgeons
　Other Professional Health Care Malpractice
Other PI/PD/WD (23)
　Premises Liability (e.g., slip and fall)
　Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
　Intentional Infliction of Emotional Distress
　Negligent Infliction of Emotional Distress
　Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
　Legal Malpractice
　Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
　Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
　Contract/Warranty Breach-Seller Plaintiff *(not fraud or negligence)*
　Negligent Breach of Contract/ Warranty
　Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
　Collection Case-Seller Plaintiff
　Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
　Auto Subrogation
　Other Coverage
Other Contract (37)
　Contractual Fraud
　Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
　Writ of Possession of Real Property
　Mortgage Foreclosure
　Quiet Title
　Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
　Writ-Administrative Mandamus
　Writ-Mandamus on Limited Court Case Matter
　Writ-Other Limited Court Case Review
Other Judicial Review (39)
　Review of Health Officer Order
　Notice of Appeal-Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400-3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
　Abstract of Judgment (Out of County)
　Confession of Judgment *(non-domestic relations)*
　Sister State Judgment
　Administrative Agency Award *(not unpaid taxes)*
　Petition/Certification of Entry of Judgment on Unpaid Taxes
　Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
　Declaratory Relief Only
　Injunctive Relief Only *(non-harassment)*
　Mechanics Lien
　Other Commercial Complaint Case *(non-tort/non-complex)*
　Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
　Civil Harassment
　Workplace Violence
　Elder/Dependent Adult Abuse
　Election Contest
　Petition for Name Change
　Petition for Relief from Late Claim
　Other Civil Petition

ESSENTIAL FORMS™

CIVIL CASE COVER SHEET

DePuy Pinnacle

Exhibit 4 - 00047

CASE NUMBER: CGC-14-541371  WILLIAM FRANCIS CONDON III VS. JOHNSON & JOHNSO

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

|        |                        |
|--------|------------------------|
| **DATE:**  | **JAN-28-2015**        |
| **TIME:**  | **10:30AM**            |
| **PLACE:** | **Department 610**     |
|        | **400 McAllister Street** |
|        | **San Francisco, CA  94102-3680** |

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.  However, it would facilitate the issuance of a case management order  **without an appearance**  at the case management conference if the case management statement is filed, served and lodged in Department 610 twenty-five (25) days before the case management conference.

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.  **This case is eligible for electronic filing and service per Local Rule 2.10.  For more information, please visit the Court's website at www.sfsuperiorcourt.org under Online Services.**

### ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A TRIAL.
(SEE LOCAL RULE 4)

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each defendant along with the complaint. All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the Alternative Dispute Resolution Information Package prior to filing the Case Management Statement.

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

Superior Court Alternative Dispute Resolution Coordinator
400  McAllister Street, Room 103
San Francisco, CA  94102
(415) 551-3876

See Local Rules 3.3, 6.0 C and 10 B re stipulation to judge pro tem.

Exhibit 4 — 00048



# MEDIATION SERVICES



THE BAR ASSOCIATION OF SAN FRANCISCO

PROCEDURES, PODCASTS, FORMS, MEDIATOR BIOGRAPHIES, AND PHOTOGRAPHS:
www.sfbar.org/mediation

adr@sfbar.org or
415-982-1600

## TESTIMONIALS

"This was the third attempt to mediate this case, and the BASF mediator was far and away the best mediator I dare say that we would not have settled today but for his efforts."

George Vuhas, Esq.
Orrick, Herrington & Sutcliffe LLP

"We had an excellent experience and, after 8 1/2 hours of mediation, [the BASF mediator] settled a very difficult case involving claims against four clients of ours by a wealthy investor who claimed inadequate disclosure was made."

Robert Charles Friese, Esq.
Shartsis Friese LLP

"When the other side made their offer, I thought there was no way we would reach an agreement – we were too far apart, but the mediator brought us together. He saved me a lot of time and aggravation by facilitating a settlement. Thanks!"

Leslie Caplan
Global Warming Campaign Manager
Bluewater Network

"BASF staff was very helpful – stayed on the task and kept after a hard to reach party. The mediator was great!"

Mark Abelson, Esq.
Campagnoli, Abelson & Campagnoli

"The [BASF] mediator was excellent! He was effective with some strong, forceful personalities."

Denise A. Leadbetter, Esq.
Zacks, Utrecht & Leadbetter



Exhibit 4 - 00049

## WHAT IS BASF'S MEDIATION SERVICE?

The Bar Association of San Francisco's Mediation Services is a private mediation service which will assist you with almost any type of dispute, from simple contract disputes to complex commercial matters.

## WHO ARE THE MEDIATORS?

They are established mediators who have private mediation practices and have met our extensive experience requirements. By going through BASF you receive the services of these highly qualified mediators at a great value.

## HOW DO I LEARN MORE ABOUT THE MEDIATORS?

BASF's website at www.sfbar.org/mediation provides bios, photos and hourly rates of mediators. You can search by name or by area of law needed for your case. BASF staff is always available to assist you with selection or to answer questions.

## HOW MUCH DOES THE SERVICE COST?

A $295 per party administrative fee is paid to BASF at the time the Consent to Mediate form is filed. This fee covers the first hour of mediator preparation time and the first two hours of session time. Time beyond that is paid at the mediator's normal hourly rate.

## HOW IS THE MEDIATOR CHOSEN?

You may request a specific mediator from our website (www.sfbar.org/mediation) and indicate your choice on the BASF Consent to Mediate form, or you may indicate on the form that you would like BASF staff to assist with the selection.

## WHY SHOULD I GO THROUGH BASF? CAN'T I JUST CALL THE MEDIATOR DIRECTLY?

BASF mediators have agreed to provide three free hours as a service to BASF. If you go directly to one of our mediators, you do not qualify for the free hours unless you notify us. Once you have filed with us, you will talk directly to the mediator to ask questions and to set a convenient mediation date and time.

## HOW LONG IS THE MEDIATION SESSION?

The time spent in mediation will vary depending on your dispute. BASF mediators are dedicated to reaching a settlement, whether you need a few hours or several days.

## WHO CAN USE THE SERVICE?

BASF mediation can be utilized by anyone and is NOT limited to San Francisco residents or issues. Also, the service may be used before a court action is filed or at any time during a court action.

## OUR CASE IS FILED IN COURT. HOW DO WE USE BASF'S MEDIATION SERVICES?

When you file the San Francisco Superior Court's Stipulation to ADR form, check the box indicating "Mediation Services of BASF." Then complete BASF's Consent to Mediate form found on our website and file it with us. (If the matter was filed in a different county, please check with that court for the appropriate process.)

## WE ARE ON A DEADLINE; HOW QUICKLY CAN WE MEDIATE?

Once all parties have filed all the paperwork, BASF can normally have you in touch with the mediator within a day or two. If there is a deadline, BASF staff will give the matter top priority.

## WHAT TYPES OF DISPUTES CAN I MEDIATE?

BASF mediators are trained in 30+ areas of law. If you don't see the area you need on our website or in this brochure, contact us; it is very likely we can match your need with one of our panelists.

## MORE INFORMATION

Visit our website (www.sfbar.org/mediation) where you can search by name or by area of law. For personal assistance, please call 415-982-1600.

QUALITY · EXPERIENCE · TRUST

WWW.SFBAR.ORG/MEDIATION · ADR@SFBAR.ORG · 415.982.1600

Exhibit 4 — 00050



Consider The Bar Association of San Francisco's

**Early Settlement Program**

**FAST**
Do you have a case filed in San Francisco Superior Court and want to settle sooner than your trial date?

**ECONOMICAL**
Want a settlement option with less stress and cost that trial?

**FAIR**
Want the skills of experienced panelists in arriving at a realistic, satisfying settlement?

Learn more about the Early Settlement Program—scan the QRCode or visit www.sfbar.org/adr/esp

**The Early Settlement Program:**

▶ Helps you resolve cases quickly and economically

▶ Has been a trusted program for over 20 years

▶ Boasts a 78% settlement rate and 97% satisfaction rate

**Early Settlement provides:**

▶ Panels of experienced attorneys (all with at least 10 years of experience)

▶ Three free hours of settlement conference (includes case evaluation and two hours preparation time

▶ Panelists who are matched with the case's type of law

▶ Low administrative fee of $295 party, capped at $590 for parties represented by the same counsel

Exhibit 4 — 00051

## What is ESP?

The Bar Association of San Francisco's **Early Settlement Program** (ESP) is available as one of San Francisco Superior Court's Alternative Dispute Resolution (ADR) programs (Local Rule 4.3).

ESP is a **highly successful** ADR program that handles cases in areas of law such as business, personal injury, employment, labor, civil rights, discrimination, insurance, malpractice, landlord/tenant, and many others.

ESP is **unique** in that the panelists, in helping you move toward settlement, can provide you confidential feedback about their evaluation of your case, including opinions as to potential case value.

For more information as well as the complete Policies & Procedures, go to: www.sfbar.org/esp

## Who are the Panelists?

The are experienced attorneys, with at least 10 years of trial experience. Panels consist of one plaintiff and one defense attorney. Sometimes, a third neutral attorney who is experienced in both types of representation serves as a 3rd panelist.

## Costs

There is a $295 administrative fee per party, capped at $590 for multiple parties represented by the same attorney. If you have a fee waiver with the Superior Court, you fee will be waived by the ESP program.

## Contact

▶ email esp@sfbar.org

▶ phone 415-982-1600

▶ fax 415-989-0381

## Steps

The forms you need can be found at **www.sfbar.org/esp**, or email adr@sfbar.org or call 415-782-8905 for a packet to be sent to you.

① Please complete the ESP Agreement and return it to BASF via email at adr@sfbar.org or by fax to 415-989-0381. You don't have to get the other parties to sign, just send yours.

② When all parties have signed the ESP Agreement, you will be sent the Notice of ESP, along with an invoice.

③ There is a $295 administrative fee per party, with a cap of $590 for multiple parties represented by the same attorney. You can pay by check, money order or credit card.

④ Send your administrative fee by fax, email or mail to: BASF / ESP, 301 Battery Street, Third Floor, San Francisco, California 94111.

⑤ When BASF receives the fees from all parties, your matter will be assigned to a panelist (or panel of 2), who you will work with to set the date, time and location for your conference.

⑥ If you must reschedule your ESP conference date, work with the other side and your panelist(s) to set the new date. BASF does not need to be notified.

⑦ Before your conference, provide a copy of your description of the dispute to all parties and panelists. BASF does not need a copy.

⑧ If the matter is settled in your ESP conference, congratulations!

⑨ If the matter is not settled in your ESP conference, your initial court date remains the same.

Exhibit 4 - 00052

 

**Superior Court of California, County of San Francisco**
**Alternative Dispute Resolution**
**Program Information Package**

| The plaintiff must serve a copy of the ADR information package on each defendant along with the complaint.  (CRC 3.221(c)) |
| --- |

**WHAT IS ADR?**
Alternative Dispute Resolution (ADR) is the term used to describe the various options available for settling a dispute without a trial.  There are many different ADR processes, the most common forms of which are mediation, arbitration and settlement conferences.  In ADR, trained, impartial people decide disputes or help parties decide disputes themselves. They can help parties resolve disputes without having to go to court.

**WHY CHOOSE ADR?**
"It is the policy of the Superior Court that every noncriminal, nonjuvenile case participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to trial." (Local Rule 4)

ADR can have a number of advantages over traditional litigation:

- **ADR can save time.**  A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.
- **ADR can save money,** including court costs, attorney fees, and expert fees.
- **ADR encourages participation.**  The parties may have more opportunities to tell their story than in court and may have more control over the outcome of the case.
- **ADR is more satisfying.**  For all the above reasons, many people participating in ADR have reported a high degree of satisfaction.

**HOW DO I PARTICIPATE IN ADR?**
Litigants may elect to participate in ADR at any point in a case.  General civil cases may voluntarily enter into the court's ADR programs by any of the following means:

- Filing a Stipulation to ADR: Complete and file the Stipulation form (attached to this packet) at the clerk's office located at 400 McAllister Street, Room 103;
- Indicating your ADR preference on the Case Management Statement (also attached to this packet); or
- Contacting the court's ADR office (see below) or the Bar Association of San Francisco's ADR Services at 415-782-8905 or www.sfbar.org/adr for more information.

For more information about ADR programs or dispute resolution alternatives, contact:

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA   94102
415-551-3876

*Or, visit the court ADR website at www.sfsuperiorcourt.org*

Exhibit 4 — 00053

The San Francisco Superior Court offers different types of ADR processes for general civil matters; each ADR program is described in the subsections below:

## 1) SETTLEMENT CONFERENCES

The goal of settlement conferences is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of a dispute early in the litigation process.

**(A) THE BAR ASSOCIATION OF SAN FRANCISCO (BASF) EARLY SETTLEMENT PROGRAM (ESP):** ESP remains as one of the Court's ADR programs (see Local Rule 4.3) but parties must select the program – the Court no longer will order parties into ESP.

**Operation:** Panels of pre-screened attorneys (one plaintiff, one defense counsel) each with at least 10 years' trial experience provide a minimum of two hours of settlement conference time, including evaluation of strengths and weakness of a case and potential case value. On occasion, a panelist with extensive experience in both plaintiff and defense roles serves as a sole panelist. BASF handles notification to all parties, conflict checks with the panelists, and full case management. The success rate for the program is 78% and the satisfaction rate is 97%. Full procedures are at: www.sfbar.org/esp.

**Cost:** BASF charges an administrative fee of $295 per party with a cap of $590 for parties represented by the same counsel. Waivers are available to those who qualify. For more information, call Marilyn King at 415-782-8905, email adr@sfbar.org or see the enclosed brochure.

**(B) MANDATORY SETTLEMENT CONFERENCES:** Parties may elect to apply to the Presiding Judge's department for a specially-set mandatory settlement conference. See Local Rule 5.0 for further instructions. Upon approval of the Presiding Judge, the court will schedule the conference and assign the case for a settlement conference.

## 2) MEDIATION

Mediation is a voluntary, flexible, and confidential process in which a neutral third party facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement, before incurring the expense of going to court, that resolves all or part of a dispute after exploring the interests, needs, and priorities of the parties in light of relevant evidence and the law. A mediator strives to bring the parties to a mutually beneficial settlement of the dispute.

**(A) MEDIATION SERVICES OF THE BAR ASSOCIATION OF SAN FRANCISCO,** in cooperation with the Superior Court, is designed to help civil litigants resolve disputes before they incur substantial costs in litigation. While it is best to utilize the program at the outset of litigation, parties may use the program at any time while a case is pending.

**Operation:** Experienced professional mediators, screened and approved, provide one hour of preparation time and the first two hours of mediation time. Mediation time beyond that is charged at the mediator's hourly rate. BASF pre-screens all mediators based upon strict educational and experience requirements. Parties can select their mediator from the panels at www.sfbar.org/mediation or BASF can assist with mediator selection. The BASF website contains photographs, biographies, and videos of the mediators as well as testimonials to assist with the selection process. BASF staff handles conflict checks and full case management

Exhibit 4 - 00054

Mediators work with parties to arrive at a mutually agreeable solution. The success rate for the program is 64% and the satisfaction rate is 99%.

Cost: BASF charges an administrative fee of $295 per party. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waivers of the administrative fee are available to those who qualify. For more information, call Marilyn King at 415-782-8905, email adr@sfbar.org or see the enclosed brochure.

(B) PRIVATE MEDIATION: Although not currently a part of the court's ADR program, civil disputes may also be resolved through private mediation. Parties may elect any private mediator or mediation organization of their choice; the selection and coordination of private mediation is the responsibility of the parties. Parties may find mediators and organizations on the Internet. The cost of private mediation will vary depending on the mediator selected.

## 3) ARBITRATION

An arbitrator is neutral attorney who presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case.

(A) JUDICIAL ARBITRATION: When the court orders a case to arbitration it is called "judicial arbitration". The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial.

Operation: Pursuant to CCP 1141.11 and Local Rule 4, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. (Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.) A case is ordered to arbitration after the Case Management Conference. An arbitrator is chosen from the court's arbitration panel. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a trial within 60 days after the arbitrator's award has been filed.

Local Rule 4.2 allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate after the filing of a complaint. If settlement is not reached through mediation, a case proceeds to trial as scheduled.

Cost: There is no cost to the parties for judicial arbitration.

(B) PRIVATE ARBITRATION: Although not currently a part of the court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

TO PARTICIPATE IN ANY OF THE COURT'S ADR PROGRAMS, PLEASE COMPLETE THE ATTACHED STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION AND SUBMIT IT TO THE COURT. YOU MUST ALSO CONTACT BASF TO ENROLL IN THE LISTED BASF PROGRAMS. THE COURT DOES NOT FORWARD COPIES OF COMPLETED STIPULATIONS TO BASF.

Exhibit 4 - 00055

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and address)* | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.: <br> ATTORNEY FOR *(Name):* | |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO <br> 400 McAllister Street <br> San Francisco, CA 94102-4514 | |
| PLAINTIFF/PETITIONER: | |
| DEFENDANT/RESPONDENT: | |
| STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER: <br><br> DEPARTMENT 610 |

1)   The parties hereby stipulate that this action shall be submitted to the following ADR process:

☐   **Early Settlement Program of the Bar Association of San Francisco (BASF)** - Pre-screened experienced attorneys provide a minimum of 2 hours of settlement conference time for a BASF administrative fee of $295 per party. Waivers are available to those who qualify. BASF handles notification to all parties, conflict checks with the panelists, and full case management. www.sfbar.org/esp

☐   **Mediation Services of BASF** - Experienced professional mediators, screened and approved, provide one hour of preparation and the first two hours of mediation time for a BASF administrative fee of $295 per party. Mediation time beyond that is charged at the mediator's hourly rate. Waivers of the administrative fee are available to those who qualify. BASF assists parties with mediator selection, conflicts checks and full case management. www.sfbar.org/mediation

☐   **Private Mediation** - Mediators and ADR provider organizations charge by the hour or by the day, current market rates. ADR organizations may also charge an administrative fee. Parties may find experienced mediators and organizations on the Internet.

☐   **Judicial Arbitration** - Non-binding arbitration is available to cases in which the amount in controversy is $50,000 or less and no equitable relief is sought. The court appoints a pre-screened arbitrator who will issue an award. There is no fee for this program. www.sfsuperiorcourt.org

☐   Other ADR process (describe) _____

2)   The parties agree that the ADR Process shall be completed by (date): _____

3)   Plaintiff(s) and Defendant(s) further agree as follows:

_____

_____

_____

| | |
|---|---|
| Name of Party Stipulating | Name of Party Stipulating |
| Name of Party or Attorney Executing Stipulation | Name of Party or Attorney Executing Stipulation |
| Signature of Party or Attorney | Signature of Party or Attorney |
| ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | ☐ Plaintiff ☐ Defendant ☐ Cross-defendant |
| Dated: _____ | Dated: _____ |

☐   *Additional signature(s) attached*

ADR-2  04/14           STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION

Exhibit 4 – 00056

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| | |

TELEPHONE NO.:                    FAX NO. *(Optional)*:
E-MAIL ADDRESS *(Optional)*:
ATTORNEY FOR *(Name)*:

SUPERIOR COURT OF CALIFORNIA, COUNTY OF
STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| CASE MANAGEMENT STATEMENT | CASE NUMBER: |
|---|---|
| *(Check one):* ☐ UNLIMITED CASE     ☐ LIMITED CASE  (Amount demanded   (Amount demanded is $25,000  exceeds $25,000)   or less) | |

A CASE MANAGEMENT CONFERENCE is scheduled as follows:

Date:                    Time:                    Dept.:                    Div.:                    Room:

Address of court *(if different from the address above)*:

☐ Notice of Intent to Appear by Telephone, by *(name)*:

INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.

1.  Party or parties *(answer one)*:
    a. ☐ This statement is submitted by party *(name)*:
    b. ☐ This statement is submitted jointly by parties *(names)*:

2.  Complaint and cross-complaint *(to be answered by plaintiffs and cross-complainants only)*
    a. The complaint was filed on *(date)*:
    b. ☐ The cross-complaint, if any, was filed on *(date)*:

3.  Service *(to be answered by plaintiffs and cross-complainants only)*
    a. ☐ All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
    b. ☐ The following parties named in the complaint or cross-complaint
        (1) ☐ have not been served *(specify names and explain why not)*:

        (2) ☐ have been served but have not appeared and have not been dismissed *(specify names)*:

        (3) ☐ have had a default entered against them *(specify names)*:

    c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served)*:

4.  Description of case
    a.  Type of case in ☐ complaint    ☐ cross-complaint    *(Describe, including causes of action)*:

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 (Rev. July 1, 2011)                    CASE MANAGEMENT STATEMENT                    Cal. Rules of Court,
rules 3.720–3.730
www.courts.ca.gov

Exhibit 4 — 00057

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
| DEFENDANT/RESPONDENT: | |

4.  b.   Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐   *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.   Jury or nonjury trial
The party or parties request ☐ a jury trial ☐ a nonjury trial.   *(If more than one party, provide the name of each party requesting a jury trial):*

6.   Trial date
a.  ☐ The trial has been set for *(date):*
b.  ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c.   Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.   Estimated length of trial
The party or parties estimate that the trial will take *(check one):*
a.  ☐ days *(specify number):*
b.  ☐ hours (short causes) *(specify):*

8.   Trial representation *(to be answered for each party)*
The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
a.   Attorney:
b.   Firm:
c.   Address:
d.   Telephone number:                                            f.   Fax number:
e.   E-mail address:                                               g.   Party represented:
☐   Additional representation is described in Attachment 8.

9.   Preference
☐ This case is entitled to preference *(specify code section):*

10.  Alternative dispute resolution (ADR)
a.   ADR information package. Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 for information about the processes available through the court and community programs in this case.

(1) For parties represented by counsel: Counsel ☐ has ☐ has not   provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

(2) For self-represented parties: Party ☐ has ☐ has not  reviewed the ADR information package identified in rule 3.221.

b.   Referral to judicial arbitration or civil action mediation (if available).

(1) ☐   This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

(2) ☐   Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

(3) ☐   This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

Exhibit 4 - 00058

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
| DEFENDANT/RESPONDENT: | |

10.  c.  Indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or
have already participated in (check all that apply and provide the specified information):

| | The party or parties completing this form are willing to participate in the following ADR processes (check all that apply): | If the party or parties completing this form in the case have agreed to participate in or have already completed an ADR process or processes, indicate the status of the processes (attach a copy of the parties' ADR stipulation): |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled<br>☐ Mediation session scheduled for (date):<br>☐ Agreed to complete mediation by (date):<br>☐ Mediation completed on (date): |
| (2) Settlement conference | ☐ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for (date):<br>☐ Agreed to complete settlement conference by (date):<br>☐ Settlement conference completed on (date): |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for (date):<br>☐ Agreed to complete neutral evaluation by (date):<br>☐ Neutral evaluation completed on (date): |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for (date):<br>☐ Agreed to complete judicial arbitration by (date):<br>☐ Judicial arbitration completed on (date): |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for (date):<br>☐ Agreed to complete private arbitration by (date):<br>☐ Private arbitration completed on (date): |
| (6) Other (specify): | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for (date):<br>☐ Agreed to complete ADR session by (date):<br>☐ ADR completed on (date): |

CM-110 [Rev. July 1, 2011]

CASE MANAGEMENT STATEMENT

Page 3 of 5

Exhibit 4 — 00059

| PLAINTIFF/PETITIONER: | CASE NUMBER: | CM-110 |
|---|---|---|
| DEFENDANT/RESPONDENT: | | |

**11. Insurance**

a. ☐ Insurance carrier, if any, for party filing this statement *(name):*

b. Reservation of rights: ☐ Yes ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**12. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

☐ Bankruptcy ☐ Other *(specify):*

Status:

**13. Related cases, consolidation, and coordination**

a. ☐ There are companion, underlying, or related cases.

(1) Name of case:
(2) Name of court:
(3) Case number:
(4) Status:

☐ Additional cases are described in Attachment 13a.

b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

**14. Bifurcation**

☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**15. Other motions**

☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

**16. Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|

c. ☐ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*

Exhibit 4 — 00060

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

17. **Economic litigation**

   a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

   b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

18. **Other Issues**

   ☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

19. **Meet and confer**

   a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

   b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

20. Total number of pages attached *(if any):* _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.

Exhibit 4 - 00061

SEP 1 7 2014  12:15

**SUMMONS**

*(CITACION JUDICIAL)*

SUM-100

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Johnson & Johnson Services, Inc.; Johnson & Johnson, Inc; DePuy
Orthopaedics, Inc.; Thomas Schmalzried, M.D.; Pinnacle West Orthopaedics,
Inc.; Golden Sate Orthopaedics, Inc.; and DOES One through One Hundred

**YOU ARE BEING SUED BY PLAINTIFF:**

*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
William Francis Condon III

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
*(El nombre y dirección de la corte es):*
San Francisco Superior Court
400 McAllister Street
San Francisco, CA 94102

CASE NUMBER *(Número del Caso):*
CGC-14-541371

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Khaldoun A. Baghdadi / Spencer J. Pahlke (190111 / 250914)
650 California Street, 26th Floor
San Francisco, CA 94108

Walkup Melodia Kelly & Schoenberger
(415) 981-7210

DATE:
*(Fecha)*  AUG 27 2014

CLERK OF THE COURT  Clerk, by Victoria Gonzalez  , Deputy
*(Secretario)*                                          *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):* Johnson & Johnson Services, Inc.
   under: ☑ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

Martin Dean's
ESSENTIAL FORMS™

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

DePuy Pinnacle - 12335-Condon

Exhibit 4 - 00062



1  | LAW OFFICES OF
2  | WALKUP, MELODIA, KELLY & SCHOENBERGER
   | A PROFESSIONAL CORPORATION
3  | 650 CALIFORNIA STREET, 26TH FLOOR
   | SAN FRANCISCO, CALIFORNIA 94108-2615
   | (415) 981-7210
4  | KHALDOUN A. BAGHDADI (State Bar #190111)
   | SPENCER J. PAHLKE (State Bar #250914)
5  | ATTORNEYS FOR PLAINTIFF

ENDORSED
F I L E D
Superior Court of California
County of San Francisco

AUG 2 7 2014

CLERK OF THE COURT
BY: VICTORIA GONZALEZ
Deputy Clerk

6

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

7

COUNTY OF SAN FRANCISCO

8

| | |
|---|---|
| 9  WILLIAM FRANCIS CONDON III, | Case No.  CGC-14-541371 |
| 10              Plaintiff, | COMPLAINT FOR DAMAGES |
| 11  v. | (1) Strict Liability—Manufacturing Defect; |
| | (2) Strict Liability—Failure to Warn; |
| 12  JOHNSON & JOHNSON SERVICES, INC.; | (3) Negligence—Design, Manufacture and |
| JOHNSON & JOHNSON, INC.; DEPUY | Sale; |
| 13  ORTHOPAEDICS, INC.; THOMAS | (4) Negligence—Failure to Recall/Retrofit; |
| SCHMALZRIED, M.D.; PINNACLE WEST | (5) Negligence—Failure to Warn; |
| 14  ORTHOPAEDICS, INC.; GOLDEN STATE | (6) Fraud—Intentional Misrepresentation; |
| ORTHOPAEDICS, INC.; and DOES ONE | (7) Fraud—Concealment |
| 15  through ONE HUNDRED, | (Punitive Damages) |
| 16              Defendants. | DEMAND FOR JURY TRIAL |

17

18

### INTRODUCTION

19

20  1.      This products liability lawsuit stems from the failure of the "DePuy Pinnacle

21  System" (the "Pinnacle System"), which is a prosthetic hip implant device. The Pinnacle System

22  was designed to replace a patient's natural hip joint due to disease, deterioration, or fracture.  The

23  hip joint, scientifically referred to as the acetabulofemoral joint, is the joint between the femur

24  (thigh bone) and acetabulum (hip socket) of the pelvis and its primary function is to support the

25  weight of the body in both static (*i.e.*, standing) and dynamic (*i.e.*, walking or running) postures.

26  The Pinnacle System suffers from similar design or manufacturing defects as the ASR System,

27  another hip implant system that defendants recalled on August 24, 2010, yet defendants continue

28  to sell the Pinnacle System without any warnings about the risks or the device failures that have

been reported to the company.

Exhibit 4 – 00063

2.      Plaintiff William Francis Condon III was implanted with the Pinnacle System on June 29, 2005. After implantation in plaintiff's body, the device failed as alleged below.

3.      Data and information that only recently became commonly known and publicly available show that the Pinnacle System had aberrant and high rates of loosening, failure, design defects, manufacturing defects, and dangerous metal debris release, which caused patients to develop complications to the point where they had to undergo "revision" surgeries. A revision surgery is a painful procedure during which some or all of the Pinnacle System components are surgically removed ("explanted") from the patient's body and replaced with new components. The revision of a Pinnacle System patient also often involves the removal of large amounts of tissue and bone that died because of complications related to defects in the device. Plaintiff alleges that problems and defects with the Pinnacle System, and defendants' other acts and omissions, some of which are presently unknown to plaintiff, were the cause of the failure of his Pinnacle System hip implant.

4.      Before the date of plaintiff's hip replacement surgeries, defendants knew that the ASR System, which suffers from the same or similar design and manufacturing defects as the Pinnacle System: was "too challenging" from the perspective of the implanting orthopedic surgeon, and knew that both systems presented abnormally high risks of early failure; generated unusual and dangerous levels of toxic metal debris in many patients' bodies; left the patient more susceptible to infection; had defects that caused a destructive process of the patient's bone and tissue; and caused other complications following implantation. Despite both actual and constructive notice of such problems and defects, defendants continued to market, sell, promote, and defend the defective Pinnacle System for years. Defendants warned neither doctors nor patients of unacceptable risks presented by the Pinnacle System; instead, defendants concealed the problems with each system and spread false information that the devices were safe. As a result, plaintiff was implanted with a defective device, developed painful and dangerous complications, had to undergo revision surgery, and will have lifelong residual problems.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

Exhibit 4 - 00064

## THE PARTIES

5.     Plaintiff underwent a left total hip replacement surgery on June 29, 2005 using the Pinnacle System. The Pinnacle implant has failed, and plaintiff has undergone a revision surgery. In plaintiff's hip surgery, plaintiff's surgeons and medical staff met or exceeded the applicable standard of care.

6.     Defendant Johnson & Johnson Services, Inc., is a corporation organized and existing under the laws of the State of New Jersey. Defendant Johnson & Johnson Services, Inc., is a subsidiary of defendant Johnson & Johnson, Inc. At all times relevant to this action, defendant Johnson & Johnson Services, Inc., conducted business in the County of San Francisco, State of California.

7.     Defendant Johnson & Johnson, Inc., is a corporation organized and existing under the laws of the State of New Jersey. Defendant Johnson & Johnson, Inc., is the parent company of defendants Johnson & Johnson Services, Inc., and DePuy Orthopaedics, Inc. At all times relevant to this action, defendant Johnson & Johnson, Inc., has conducted business in County of San Francisco, State of California.

8.     Defendant DePuy Orthopaedics, Inc., is a corporation organized and existing under the laws of the State of Indiana. At all times relevant to this action, defendant DePuy Orthopaedics, Inc., has conducted business in the County of San Francisco, State of California.

9.     Defendants Johnson & Johnson Services, Inc., Johnson & Johnson, Inc., and DePuy Orthopaedics, Inc., (hereafter, collectively, "DePuy") developed, manufactured, advertised, promoted, marketed, sold, and/or distributed the defective Pinnacle System throughout the United States, including the County of San Francisco.

10.     Defendant Thomas Schmalzried, M.D., (hereafter, "Dr. Schmalzried") is an individual. Plaintiff is informed and believes and thereon alleges that he resides in Los Angeles County, State of California.

////

////

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

Exhibit 4 - 00065

# SUMMONS
## (CITACION JUDICIAL)

SUM-100

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Johnson & Johnson Services, Inc.; Johnson & Johnson, Inc; DePuy
Orthopaedics, Inc.; Thomas Schmalzried, M.D.; Pinnacle West Orthopaedics,
Inc.; Golden Sate Orhtopaedics, Inc.; and DOES One through One Hundred

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
William Francis Condon III



FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

SEP 1 8 2014

Law Department

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>San Francisco Superior Court<br>400 McAllister Street<br>San Francisco, CA 94102 | CASE NUMBER *(Número del Caso):*<br>CGC-14-54137 1 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Khaldoun A. Baghdadi / Spencer J. Pahlke (190111 / 250914)    Walkup Melodia Kelly & Schoenberger
650 California Street, 26th Floor                             (415) 981-7210
San Francisco, CA 94108

| DATE:<br>*(Fecha)* | AUG 2 7 2014 | CLERK OF THE COURT<br>Clerk, by<br>*(Secretario)* | Victoria Gonzalez | , Deputy<br>*(Adjunto)* |
|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):* Johnson & Johnson, Inc.
   under: ☑ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

*Martin Dean's*
**ESSENTIAL FORMS**

SUMMONS

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

DePuy Pinnacle - 12335-Condon

Exhibit 4 - 00066

1

LAW OFFICES OF
WALKUP, MELODIA, KELLY & SCHOENBERGER
A PROFESSIONAL CORPORATION

650 CALIFORNIA STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94108-2615
(415) 981-7210

KHALDOUN A. BAGHDADI (State Bar #190111)
SPENCER J. PAHLKE (State Bar #250914)
ATTORNEYS FOR PLAINTIFF

ENDORSED
FILED
Superior Court of California
County of San Francisco

AUG 27 2014

CLERK OF THE COURT
BY: VICTORIA GONZALEZ
Deputy Clerk

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

WILLIAM FRANCIS CONDON III,

                    Plaintiff,

v.

JOHNSON & JOHNSON SERVICES, INC.;
JOHNSON & JOHNSON, INC.; DEPUY
ORTHOPAEDICS, INC.; THOMAS
SCHMALZRIED, M.D.; PINNACLE WEST
ORTHOPAEDICS, INC; GOLDEN STATE
ORTHOPAEDICS, INC.; and DOES ONE
through ONE HUNDRED,

                    Defendants.

Case No. CGC-14-541371

COMPLAINT FOR DAMAGES

(1) Strict Liability—Manufacturing Defect;
(2) Strict Liability—Failure to Warn;
(3) Negligence—Design, Manufacture and
Sale;
(4) Negligence—Failure to Recall/Retrofit;
(5) Negligence—Failure to Warn;
(6) Fraud—Intentional Misrepresentation;
(7) Fraud—Concealment
(Punitive Damages)

DEMAND FOR JURY TRIAL

## INTRODUCTION

1.      This products liability lawsuit stems from the failure of the "DePuy Pinnacle

System" (the "Pinnacle System"), which is a prosthetic hip implant device. The Pinnacle System

was designed to replace a patient's natural hip joint due to disease, deterioration, or fracture. The

hip joint, scientifically referred to as the acetabulofemoral joint, is the joint between the femur

(thigh bone) and acetabulum (hip socket) of the pelvis and its primary function is to support the

weight of the body in both static (*i.e.*, standing) and dynamic (*i.e.*, walking or running) postures.

The Pinnacle System suffers from similar design or manufacturing defects as the ASR System,

another hip implant system that defendants recalled on August 24, 2010, yet defendants continue

to sell the Pinnacle System without any warnings about the risks or the device failures that have

been reported to the company.

Date Served: 9-18-14
Company Served: J+J

Exhibit 4 – 00067

1    2.    Plaintiff William Francis Condon III was implanted with the Pinnacle System on

2 June 29, 2005. After implantation in plaintiff's body, the device failed as alleged below.

3    3.    Data and information that only recently became commonly known and publicly

4 available show that the Pinnacle System had aberrant and high rates of loosening, failure, design

5 defects, manufacturing defects, and dangerous metal debris release, which caused patients to

6 develop complications to the point where they had to undergo "revision" surgeries. A revision

7 surgery is a painful procedure during which some or all of the Pinnacle System components are

8 surgically removed ("explanted") from the patient's body and replaced with new components.

9 The revision of a Pinnacle System patient also often involves the removal of large amounts of

10 tissue and bone that died because of complications related to defects in the device. Plaintiff

11 alleges that problems and defects with the Pinnacle System, and defendants' other acts and

12 omissions, some of which are presently unknown to plaintiff, were the cause of the failure of his

13 Pinnacle System hip implant.

14    4.    Before the date of plaintiff's hip replacement surgeries, defendants knew that the

15 ASR System, which suffers from the same or similar design and manufacturing defects as the

16 Pinnacle System, was "too challenging" from the perspective of the implanting orthopedic

17 surgeon, and knew that both systems presented abnormally high risks of early failure; generated

18 unusual and dangerous levels of toxic metal debris in many patients' bodies; left the patient more

19 susceptible to infection; had defects that caused a destructive process of the patient's bone and

20 tissue; and caused other complications following implantation. Despite both actual and

21 constructive notice of such problems and defects, defendants continued to market, sell, promote,

22 and defend the defective Pinnacle System for years. Defendants warned neither doctors nor

23 patients of unacceptable risks presented by the Pinnacle System; instead, defendants concealed the

24 problems with each system and spread false information that the devices were safe. As a result,

25 plaintiff was implanted with a defective device, developed painful and dangerous complications,

26 had to undergo revision surgery, and will have lifelong residual problems.

27

28

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

2

COMPLAINT FOR DAMAGES – CASE NO.

Exhibit 4 - 00068

THE PARTIES

5.     Plaintiff underwent a left total hip replacement surgery on June 29, 2005 using the Pinnacle System.  The Pinnacle implant has failed, and plaintiff has undergone a revision surgery. In plaintiff's hip surgery, plaintiff's surgeons and medical staff met or exceeded the applicable standard of care.

6.     Defendant Johnson & Johnson Services, Inc., is a corporation organized and existing under the laws of the State of New Jersey.  Defendant Johnson & Johnson Services, Inc., is a subsidiary of defendant Johnson & Johnson, Inc.  At all times relevant to this action, defendant Johnson & Johnson Services, Inc., conducted business in the County of San Francisco, State of California.

7.     Defendant Johnson & Johnson, Inc., is a corporation organized and existing under the laws of the State of New Jersey.  Defendant Johnson & Johnson, Inc., is the parent company of defendants Johnson & Johnson Services, Inc., and DePuy Orthopaedics, Inc.  At all times relevant to this action, defendant Johnson & Johnson, Inc., has conducted business in County of San Francisco, State of California.

8.     Defendant DePuy Orthopaedics, Inc., is a corporation organized and existing under the laws of the State of Indiana.  At all times relevant to this action, defendant DePuy Orthopaedics, Inc., has conducted business in the County of San Francisco, State of California.

9.     Defendants Johnson & Johnson Services, Inc., Johnson & Johnson, Inc., and DePuy Orthopaedics, Inc., (hereafter, collectively, "DePuy") developed, manufactured, advertised, promoted, marketed, sold, and/or distributed the defective Pinnacle System throughout the United States, including the County of San Francisco.

10.     Defendant Thomas Schmalzried, M.D., (hereafter, "Dr. Schmalzried") is an individual.  Plaintiff is informed and believes and thereon alleges that he resides in Los Angeles County, State of California.

////

////

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

3

Exhibit 4 – 00069

1      11.    Defendant Pinnacle West Orthopaedics, Inc., is a corporation organized and

2  existing under the laws of the State of California.  At all times relevant to this action, said

3  defendant has had the State of California as its principal place of business.

4      12.    Defendant Golden State Orthopaedics, Inc., is a corporation organized and existing

5  under the laws of the State of California.  At all times relevant to this action, said defendant has

6  had the State of California as its principal place of business.

7      13.    The true names and capacities, whether individual, corporate, or otherwise of Does

8  One through One Hundred, inclusive, are presently unknown to plaintiff, who therefore sues them

9  by fictitious names.  Plaintiff is informed and believes, and upon such information and belief

10  alleges, that each of said defendants is, negligently or otherwise, legally responsible in some

11  manner for the events and happenings herein alleged, either as manufacturers, suppliers, sellers, or

12  distributors and that said defendants, negligently or otherwise, acted or omitted to act in one or

13  more of said occupations or businesses and that such negligence or other basis of liability legally

14  caused the injuries and damages hereinafter set forth.  Plaintiff prays leave to amend this

15  Complaint to assert herein the true names, capacities, functions, occupations, and businesses,

16  along with the factual basis for liability of said defendants, when the same are ascertained.

17      14.    Plaintiff is informed and believes, and upon such information and belief alleges

18  that, at all times and places mentioned herein, defendants, and each of them, were the agents,

19  ostensible agents, co-conspirators, servants, employees, partners, joint venturers, affiliates,

20  franchisees, and/or alter egos of the remaining defendants, and each of them, and that each of them

21  were at all times and places mentioned herein acting in concert and within the purpose and scope

22  of such conspiracy, service, agency, ostensible agency, employment, partnership, joint venture,

23  affiliation, and/or franchise.

24                   **THE DePUY PINNACLE SYSTEM**

25      15.    The Pinnacle System implanted in plaintiff is a metal-on-metal device, as the

26  device's ball-shaped metal femoral head was designed to articulate directly against an acetabular

27  cup with a metal liner.

28  ////

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

Exhibit 4 - 00070